ROBBINS (FARMERS' BANK v.).   See Case No. 4,660.

---

## Case No. 11,881.

ROBBINS et al. v. FIREMEN'S FUND INS. CO.

[16 Blatchf. 122.] [1]

Circuit Court, S. D. New York.   March 27, 1879.

INSURANCE—FIRE—GOODS HELD ON COMMISSION—DOUBLE INSURANCE—CONTRIBUTION.

1. R. took out a policy of insurance on merchandise, his own, or held by him in trust or on commission: *Held*, that the insurance was on the merchandise and not on the interest of R. in it, and that parol evidence was inadmissible to show that the intent of the parties to the policy was to insure only the goods of R., or his interest in the goods.

2. The owner of the property so held on commission by R., and so insured, insured it himself, also: *Held*, that the insurance on such property was double, and that the policy of R. on such property was contributory with the policy of the owner on the same property.

[This was an action by Henry A. Robbins and Daniel F. Appleton against the Firemen's Fund Insurance Company of San Francisco. Heard on motion for a new trial.]

Leon Abbett, for plaintiffs.

Joshua M. Van Cott and John Winslow, for defendant.

SHIPMAN, District Judge. This is a motion for a new trial. Without giving a history in detail of all the facts in the case, the facts which are material upon the decision of this motion are as follows: The American Watch Company, of Waltham, Massachusetts, has been, for many years, a large manufacturer of silver watch cases and of watch movements. Robbins & Appleton, the plaintiffs, were, at the time of the issuing of the policies hereinafter mentioned, and for a long time have been, the sole selling agents of said company, and to this firm the entire production of the company was sent for sale, upon commission. The plaintiffs were factors or agents for no other person or corporation. They also manufactured and sold gold watch cases, upon their own account. Within a year prior to the fire hereinafter mentioned, they procured four policies in different fire

---

1 [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

insurance companies, in their own names, payable to themselves, whereby they were insured against loss by fire, to the extent of thirty thousand dollars, on "watches, jewelry and other merchandise, their own, or held by them in trust or on commission, or sold but not delivered, contained in substantial iron safes, on second floor of brick and iron building, Nos. 1, 3 and 5 Bond street, New York City." All the premiums of insurance the plaintiffs paid from their own funds. The policy in the defendant company was one of the four, was for $5,000, and contained the words, "Other insurance permitted, without notice." The policy also contained the following provisions: "7. In case of any other insurance upon the property hereby insured, whether made prior or subsequent to the date of this policy, the assured shall be entitled to recover of this company no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount insured thereon, and it is hereby declared and agreed, that, in case of the assured holding any other policy in this or any other company, on the property insured, subject to the conditions of average, this policy shall be subject to average in like manner. Re-insurance, in case of loss, to be settled in proportion as the sum re-insured shall bear to the whole sum covered by the re-insured company. 9. In case of loss on property held in trust or on commission, or, if the interest of the assured be other than the entire and sole ownership, the names of the respective owners shall be set forth in the proofs of loss, together with their respective interests therein. If this policy is made payable, in case of loss, to a third party, or held as collateral security, the proofs of loss shall be made by the party originally insured, unless there has been an actual sale of the property insured. And, further, that it shall be optional with the company to repair, rebuild or replace the property lost or damaged, with other of like kind and quality, within a reasonable time, giving notice of their intention so to do within thirty days after receipt of the proofs herein required. The cash value of property destroyed or damaged by fire shall in no case exceed what would be the cost to the assured, at the time of the fire, of replacing the same, and, in case of the depreciation of such property, from use or otherwise, a suitable deduction from the cash cost of replacing shall be made, to ascertain the actual cash value at the time of the fire." At the same time, the plaintiffs, as the agents of the American Watch Company, procured from fourteen companies policies of insurance against fire, in the name of said watch company, to the extent of $80,000, payable to its treasurer, upon watches, watch movements and other merchandise contained in the same safes on the same floor of said building. All these policies were contributory. The premiums were paid by the watch company. By a fire which occurred on March 6th, 1877, the plaintiffs' own property in these safes, valued

at $22,000, was damaged to the extent of $3,-000, and the watch company's property therein, valued at about $107,000, was damaged to the extent of $85,500. Of this loss, $80,000 were upon watch movements, and $5,500 were upon silver watch cases. These goods were held by the plaintiffs, at the time of the fire, on commission, for the watch company.

The defendant, not denying its liability to the plaintiffs for a proportionate share of their own loss, insisted, that the extent of its liability was $500, upon three grounds: 1st. That the insurance was upon the plaintiffs' goods alone, or upon the plaintiffs' interest in the property in the safes, and that such was the intent of the parties to the contract, and that extrinsic evidence was admissible to show such intent; 2d. That the procuring policies of insurance in the name of the plaintiffs, upon the goods of the watch company, was an unauthorized and voluntary act of the plaintiffs, and was not ratified, prior or subsequent to the fire, by the principals, who, in fact, elected not to adopt the insurance; 3d. That the insurance upon the watch company's goods in the name of the plaintiffs was not double insurance, and did not contribute with the policies in the name of the watch company, and that, in any event, the plaintiffs could recover, for the benefit of the watch company, only the excess of its loss above $80,000, to wit, $5,500. The plaintiffs, denying each position of the defendant, contended, upon the second point, that they were authorized to insure, in their own name, the watch company's property, for its benefit, and that they procured the four policies under and in pursuance of such authority; and that, if not so authorized, the contracts and the policies of insurance had been adopted by the watch company. The court declined to admit parol evidence of the intent of the parties, upon the ground, that, under the conceded facts in the case, the policy was a contract to insure the property in the safes, and not merely the interest of the plaintiffs therein; and that, it being undenied that no property was, or was intended to be, held on commission, except the property of the watch company, extrinsic evidence was not admissible to vary the contract; and, furthermore, that the offered evidence, if admissible, did not tend to show a non-intent by the parties to the contract to insure the watch company's property.

The court charged the jury as follows: "Upon the undisputed facts, the legal construction of the policy of insurance is, that the merchandise in the second story safes, whether belonging to Robbins & Appleton, or held by them in trust, or on commission, for the watch company, was insured, and that Robbins & Appleton's interest in the property was not simply insured. The insurance was upon the whole property, and not merely upon the plaintiffs' interest in the property. Furthermore, the plaintiffs having insured the property in their own names, and with their own funds, are entitled to receive from

the insurance company their own loss in full, and the excess of insurance above the plaintiffs' loss they hold as trustees, for the benefit of their principals, the watch company, and the excess of insurance, which, in this case, would be $27,000, contributes with the policies which were taken out in the name of the watch company, provided this and the other policies ever become valid and subsisting policies in which the watch company was beneficially interested." Two questions of fact were submitted to the jury, who were instructed as follows: "If you find that this policy was taken out in the name of Robbins & Appleton, in pursuance of and in conformity with the instructions of the watch company previously given to its factors, then you will find for the plaintiffs for the sum of $4,095 75 and interest from August 25th, 1877; but, if you find that the policy in the name of Robbins & Appleton was not previously authorized, and was not taken in pursuance of instructions, or was a voluntary act on the part of Robbins & Appleton, then you will inquire whether, before or after the fire, and prior to April 11th, 1877, it was adopted by the watch company, for, unless so adopted, it is not entitled to the benefit of the insurance, and the plaintiffs are only entitled to recover $500 and interest." The jury returned a verdict for the plaintiffs, for $4,095 75 and interest.

1st. The proper construction of the contract of insurance. This question has been, in my opinion, substantially settled by the decision in Home Ins. Co. v. Baltimore Warehouse Co., 93 U. S. 527. In that case, a policy of insurance had been procured by warehousemen, in their own names and payable to themselves, upon goods which were the property of the consignors, and upon which the bailees had made advances. The language of the policy was: The Home Insurance Company "insure Baltimore Warehouse Company against loss or damage by fire, to the amount of $20,000, on merchandise, hazardous or extra hazardous, their own or held by them in trust, or in which they have an interest or liability, contained in" a described warehouse. The court said: "There is nothing ambiguous in this description of the subject insured. It is as broad as possible. The subject was merchandise stored or contained in a warehouse. It was not merely an interest in that merchandise. The merchandise of the warehouse company, owned by them, was covered, if any they had. So was any merchandise in the warehouse, in which they had an interest or liability. And so was any merchandise which they held in trust. The description of the subject must be entirely changed before it can be held to mean what the insurers now contend it means. If, as they claim, only the interest which the warehouse company had in the merchandise deposited in their warehouse was intended to be insured, why was that interest described as the merchandise itself? Why not as the assur-

ed's interest in it? Throughout the policy, whenever the subject intended to be insured is spoken of, it is described, not as a partial interest, nor as a mere lien for advances and charges upon the goods held in storage, but as the property itself, whatever may be the existing rights to it. * * * * * * It is undoubtedly the law, that wharfingers, warehousemen and commission merchants, having goods in their possession, may insure them in their own names, and, in case of loss, may recover the full amount of insurance, for the satisfaction of their own claims, first, and hold the residue for the owners. Such insurance is not unusual, even when not ordered by the owners of goods, and, when so made, it inures to their benefit, and such insurance, we must hold, the warehouse company sought and obtained by the policy of the plaintiff in error."

The defendant, however, insists that parol evidence was admissible to show that the watch company's property was not intended to be insured. When a policy is taken out "for or on account of the owners," or "on account of whomsoever it may concern," the owners not being specified, evidence is often necessary to show who are the owners, or who are intended to be insured thereby, because the contract fails to designate the names of the beneficiaries, and, being silent, the names of the owners must be supplied by extrinsic evidence. So, also, when the insured has property in trust or on commission, belonging to two persons, one of whom is the actual beneficiary of the policy and the other is not, it is competent to show, by extrinsic evidence, whose property was actually intended to be covered by the insurance. For, in this case, the policy is silent as to a material part of the contract. And, where a factor, at the time of the fire, has property in his possession belonging to one person, but, at the time of taking the insurance, and continuously thereafter, both parties to the contract intended that the insurance should be for the benefit of another person, whose property has never been received, in such case the company may show the intent of the factor, and that the policy never attached to any property in his possession. In this case, however, it was proved, and not denied, that the plaintiffs were factors for the watch company alone, and that, for many years, they had been exclusively factors for that company; and it is not claimed that they contemplated becoming factors for any other person. Property held on commission being specified in the contract, and, at the time of the execution of the contract, and continuously thereafter, the plaintiffs having had in their store, on commission, the property of no one but the watch company, it follows, that the policy, so far forth as it relates to property on commission, attached to the property of the watch company, or to no property. The effect of the parol testimony would have been to alter the express and

unambiguous terms of the written contract.

2d. Did the several policies upon the watch company's property constitute double insurance, and were the four policies which were issued in the name of the plaintiffs upon said property, contributory with the policies upon the same property in the name of the watch company?

This question has been very fully and ably argued by the defendant's counsel, but I am of opinion that the principles which govern its decision have been authoritatively established in the Baltimore Warehouse Co. Case, cited supra, although it is obvious that the question which is presented by the facts of this case was not before the supreme court. The warehouse company held in its warehouse goods belonging to seven depositors. A large portion of this property was destroyed by fire. Previously to, and at the time of, the fire, the company held a policy for $20,000 in the Home Insurance Company, and another policy, substantially in the same form, for $10,000, issued by another insurance company. To four of the consignors the warehouse company had made advances. Three of the consignors to whom advances had been made had taken out policies, also in force at the time of the fire, in their own names, covering specific portions of said property, and all of the last mentioned policies, except two, were made payable, on their face, to the warehouse company, in these words: "Loss, if any, payable to the Baltimore Warehouse Company," and were delivered to and held by it as additional security for advances, at the time of making said advances. The insurance company asked the circuit court to charge, that "the policies obtained by Hough, Clendening & Co. upon their cotton, and made payable to the Baltimore Warehouse Company, being for a different assured, were upon a different interest from that covered by the policy now in suit, and the latter is not bound to contribute to any losses for which the former are liable." The circuit court was of the opinion that the policies in the name of the warehouse company covered only its interest in the property contained in the warehouse, and charged that it was entitled to recover for two-thirds of all loss or damage to the property upon which it had made advances, to the extent of its advances on the same, less the amount which the jury should find to be due from the special policies on cotton on which the plaintiff had made advances, made payable to the plaintiff, each of said special policies contributing to the loss on the cotton insured by it, with the general policies held by the plaintiff. The jury found for the plaintiff, and the insurance company brought a writ of error. The supreme court said: "The most important question in this case relates to the proper construction of the defendants' policy of insurance. It is contended, on their behalf, that it covered only the warehouse company's interest in the goods contained in the warehouse. If this is the true meaning of the contract, the instruction given by the circuit court to the jury was erroneous. If, on the other hand, the policy covered the merchandise itself, and not merely the interest which the warehouse company had therein, there is no just ground of complaint of the charge of the circuit judge." After deciding that the policy covered the merchandise itself, the court proceeds as follows: "Without pursuing this discussion further, we have said enough to vindicate our opinion, that the policy upon which this suit was brought covered the merchandise held by the warehouse company on storage, and not merely the interest of the bailees in that property. It follows, necessarily, that there was double insurance. The policy issued to the warehouse company, and those obtained by the depositors of the merchandise, covered the same property, and they were for the benefit of the same owners. The persons assured were the same; for, if the policies taken out by Hough, Clendening & Co. were upon their goods, notwithstanding the memorandum that the loss, if any, was payable to the Baltimore Warehouse Company, as may be conceded was the case, so was the policy now in suit. The insurers are liable, therefore, pro rata, each contributing proportionately." It is true, that the court did not pass upon the question whether the policy in suit contributed with the policies which were not made payable to the warehouse company, for that question was not before the court. The only point which the court decided, in this part of the case, was, whether two policies upon the same interest in the same property, one issued to the bailees and owners and made payable to the bailees, and the other issued to the bailees, constituted double insurance. The principle upon which the court placed its decision in favor of double insurance is, that these two classes of policies covered the same interest in the same property, and were for the benefit of the same owners. Where these two facts exist, double insurance is the result. Lord Mansfield defined double insurance to be, "when the same man is to receive two sums instead of one, or the same sum twice over for the same loss, by reason of his having made two insurances upon the same goods on the same ship" (Godin v. London Assur. Co., 1 Burrows, 489, 495), but it is not essential that the respective policies should be issued to the same persons. If the policies, though issued to different persons, cover the same interest, and inure to the benefit of the same owner, the insurance is double. If the policies are issued to different persons, in respect of different rights, as, for example, to mortgagor and mortgagee, or do not inure to the benefit of the same owner, the insurance is not double. And here consists the dis-

tinction between the case of North British & M. Ins. Co. v. London, L. & G. Ins. Co., 5 Ch. Div. 569, which is relied upon by the defendant, and the Warehouse Co. Case. In the English case, Barnett & Co., wharfingers, who, by the custom of London, or of the trade, were responsible to their consignors, like common carriers, and were liable to make good loss by fire, effected insurance in their own name, to a large amount, on property, "the assured's own, in trust or on commission, for which they are responsible," in their warehouse. The policies contained a contributory clause. A fire destroyed property of one of the consignors, who had insured in their own names in other companies. Barnett & Co. were paid their insurance and paid the consignors the amount of their loss. The wharfingers' insurers claimed contribution from the consignors' insurers, and whether the whole insurance was double and contributory was the question in an equity suit between the two sets of insurers. It was held that the insurance was not double. The different judges place the stress of their argument upon the fact, that the wharfingers were liable as common carriers, and construe the contract to be an insurance to protect them against loss arising from this liability. The two classes of insurance were considered to be upon different interests, although upon the same property. In the Baltimore Warehouse Co. Case the court gave a different construction to the contract.

It results, then, from the fact that the Robbins & Appleton policies, so far forth as they related to the watch company's property, were upon the same property which was insured in its name, and from the further fact, that the two sets of policies upon the watch company's goods were for the benefit of the same owner, (for, as to the insurance upon the property of the watch company, in the plaintiffs' policies, they were trustees for the owner,) that the insurance was double and contributory. The plaintiffs' policies upon the watch company's property present the ordinary case of insurance, by a factor, of goods in his possession belonging to another person. Such insurance, either directly or indirectly, inures to the benefit of the owner. In this case, the insurance was directly for the benefit of the owner, as the factors had no charges or liens upon the goods. The fact that the plaintiffs' policies covered goods which were their own, and were not in the watch company's policies, does not take the insurance upon the company's goods out of double insurance. for, this circumstance does not alter the fact that the insurance upon the watch company's goods was entirely for its benefit. The two classes of property were perfectly distinct and separate, and the ascertainment of the amount due upon account of the watch company was merely a matter of arithmetical computation

The defendant also asks that a new trial should be granted upon the ground that the verdict was contrary to the evidence. Two questions of fact were submitted to the jury: 1st. Was the insurance unauthorized? 2d. If unauthorized, was it adopted? The jury found for the plaintiffs generally. In the present condition of the litigation of the plaintiffs with their insurers, (another suit now awaiting trial in this court,) I do not think it advisable to discuss the questions of fact, except simply to say, that the state of the evidence was not such as to warrant the granting a new trial.

The motion for a new trial is denied.

[NOTE. A motion was made for a certificate of division of opinion, which was denied upon the ground that it would be unavailing as a basis for re-examination by the supreme court. Case No. 11,882. For an action by plaintiffs against the People's Insurance Company on a similar state of facts as in this case, see Id. 11,885.]