By the Court.—Freedman, J.
The precise question involved in the appeal is whether the three general policies held by Richardson & Co. on property “their own or held in trust, etc.,” constitute other insurance within the meaning of the nine specific policies on the Lowell property, and as such are- chargeable with contribution. Substantially the question is presented by exceptions to the rulings of the learned referee who tried the cause, holding parol evidence incompetent upon this poitit and determining solely upon the language of the policies that the three general policies should contribute with the nine specific policies to pay the loss of the Lowell Company.
The contention on behalf of the Lowell Company . throughout, was (1) that R. & Co. obtained the nine specific policies on Lowell, and no other policies on account of the Lowell Company; (2) that R. & Co. had no authority to obtain insurance for the Lowell Company by general policies, mixing the interests of that company with the interests of other owners of other insured property, and that R. & Co. did not *153 intend any insurance in the -three general policies to-be for the Lowell Company -; (3) that even if R. & Co. had so intended, the Lowell Company did not adopt it, but rejected it; (4) that the evidence received provisionally, of the course of the business, of the payments by the Lowell Company for the insurance in the nine specific policies, and for no other ; of the payment by R. & Co. for the insurance in the three general policies, without contribution from the Lowell, or claim for contribution and that no insurance except in the nine policies,, for the Lowell, had ever been notified to the Lowell Company, and that the company had never adopted any other ; was competent evidence, in respect of the extent of R. & Co.’s agency to obtain insurance, and of the extent and scope of the three general policies, as not covering the Lowell property and loss.
The general rule undoubtedly is, that a contract reduced to writing must be taken to be the repository and evidence of the final intention and understanding of the parties, and that when parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagements, it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking were reduced to writing ; and that in such a case all oral testimony of a previous colloquium between the parties, or of conversation or declarations at the time when it was. completed, or afterwards, must be rejected (Pohalski v. Mutual Life Ins. Co., 36 N. Y. Super. Ct. 234, and authorities therein cited, which was affirmed by the court of appeals in 56 N. Y. 640).
But the rule' is subject to some well established qualifications, or, more properly speaking, it does not apply w-here the facts do not bring the case within it.
*154 Parol evidence is admissible lo show that the writing as executed does not represent the whole contract between the parties, but but was executed in part performance only (Hutchins v. Hebbard, 34 N. Y. 24 ; Barker v. Bradley, 42 Id. 316 ; Hope v. Smith, 35 N. Y. Super. Ct. 458 ; affirmed in 58 N. Y. 380). So a party may show the purpose for which the writing was executed (Cipperly v. Cipperly, 4 N. Y. Supreme Ct. [T. & C.] 342 ; Hutchins v. Hebbard, 34 N. Y. 24); or that there was a conditional delivery by which a locus pcenitentice was preserved (Dietz v. Farish 44 N. Y. Super. Ct. 190 ; affirmed in 79 N. Y. 520); or that the writings, though purporting on their face to be a contract, were not, in fact, intended by the parties as such (Grierson v. Mason, 60 N. Y. 394).
In case of uncertainty it may be laid down as a broad and distinct rule of law that extrinsic evidence of every material fact which will enable the court to identify the persons and things to which the instrument refers, must of necessity be received. If the language of the instrument be alike applicable to each of several persons, parcels of land, species of goods, or circumstances : or if the terms be vague and general, or have diverse meanings, parol evidence, says Taylor on Evidence, will always be admissible of any extrinsic circumstance tending to show what person or persons, or what things, were intended.
As has been well said by the learned counsel for the appellants, a policy, however general and comprehensive its language, covers only the party intended, and who has authorized or adopts it. General indeterminate words, such as “owners,” “whom it may concern,” “ trust” property, are equally comprehensive, and are broad enough to cover everything answering the description, and intended to be covered ; but the property and interests they are intended to cover must be averred and proved. Ho case holds that *155 “ owners ” necessarily covers all owners; or “whom it may concern” necessarily covers all concerned in a loss; or property “in trust” necessarily covers all trust property. The parties insured by such general terms are only those for whom the insurance was intended, and it is so laid down in all the elementary authorities and all the adjudged cases. Evidence «to point and apply indeterminate words is held not to violate the rule which excludes extrinsic proof to vary writings. Lee v. Adsit (37 N. Y. 78) is directly in point and decisive.
In the case at bar the rule contended for by the respondent must either be a universal rule, irrespective of actual intention, or no rule at all; there is no middle ground. The trust clause must cover all trust property, without regard to intention, or only cover such as was intended; there is no other alternative. The learned referee seems to have held both ways ; he held it- not to be a universal rule, and threw out the twenty-two policies on proof of intention ; and he held it to be a universal rule, excluding proof of intention, and brought the three general policies into contribution.
The practical effect of his decision is to make the nine policies attaching first to the goods of the Lowell, Everett and Boot Mills, notwithstanding their secondary clause, specific policies on the goods of those particular mills, and expunging the secondary clause entirely, and to make the three general policies, which he deemed must, by force of their language, cover all the goods in the store alike, attach first to the goods of the Lewiston and Granite Mills, and then specifically to the goods of the Lowell, Everett and Boot Mills, exactly as if they were in form policies attaching first to the goods of the Lewiston and Granite, and then to those other goods by name. The net result to the companies liable on those three general policies is that they are to be made to pay nearly one hundred per *156 cent, of the face of their policies, though the loss on the Lewiston, and Granite, which they were taken out to cover, was less than thirty-three per cent., and are made to pay the difference to the relief of the companies liable primarily on the loss of the Lowell, Everett and Boot goods. It also has the effect to discharge the companies whose policies, to the amount of $30,000, attached first to the goods of the Everett Company, of which there were but $15,399.92, from all liability under the secondary clause, which was left floating to the amount of at least $14,600.08.
The referee, in resting his decision upon the case of Baltimore Warehouse Co. v. Home Ins. Co. (3 Otto, 527), misconceived the bearing of the point decided by the supreme court of the United States. In that case the general policy to the bailee was conceded to cover all the property in the warehouse, and it was consequently held that extrinsic evidence could not be resorted to in order to show that insurance which, by the terms of the policy, was upon “Merchandise in the warehouse, their own, or held by them in trust, or in which they have an interest,” was intended to be simply insurance upon the interest of the Warehouse Company. In the case at bar the question is whether the general policies attached at all to the property of the Lowell Company. To the extent of determining this question extrinsic evidence may be resorted to. Thus in McMasters v. North America Ins. Co. (55 N. Y. 222), it was held by the court of appeals that the insured could himself testify that a collateral policy taken out by himself in another company did not cover the same property covered by the policy sued upon, though the description was comprehensive enough to cover it. Robbins v. Firemen’s Fund Ins. Co. (16 Blatchf. 122) does not help the respondent. In that case the general policy was held to be contributory with the specific policies, because it contained the trust *157 clause, and the consignor’s property covered by the specific policies was the only trust property held by the consignee, and the only property therefore that could have been in contemplation in insuring trust property. It was this extrinsic fact which controlled, for Judge Shipman, in the course of his opinion, says that when the insured has property in trust or on commission belonging to two persons, one of whom is the actual beneficiary in the policy and the other is not, it is competent to show by extrinsic evidence whose property was actually intended to be covered by the insurance.
The error involved in the rejection of the extrinsic evidence under consideration becomes still more clear when it is borne in mind that the so-called general policies came into the case collaterally- The issue of contribution was presented by the defense, and upon this branch of the case the affirmative rested with the defendant. The burden was cast upon the defendant to show affirmatively all the details essential to it, the identity of the risk and interest, and also the availability of the alleged contributory insurance as an indemnity to the Lowell Company, for whose benefit the policy in suit was obtained. All the defense proved was the existence of the three policies claimed to be contributory, and then it rested upon the mere inference of identity of risk, interest and availability arising from the letter of the policies. If the defendant could rest on such inference alone,—a point not necessary to be determined here,—it certainly was competent for the plaintiffs to repel the inference by parol testimony, and to show the precise nature, character and purpose of the policies brought into the case by the defense. The objection of the parol testimony, therefore, clearly constitutes ground for reversal. The precise proving force of the rejected evidence it is unnecessary to detail or determine here. It is sufficient *158 that upon it the referee might have found that in respect to the three general policies the contention on behalf of the Lowell Company was correct, and that the said policies never were intended to cover the goods of the said company.
It has been urged by the appellants that for the error complained of a new trial should not be ordered, but that the court, upon the facts before it, should modify the judgment by raising it to $36,2915 1, with interest. It is true that where the necessary facts on which a final judgment depends are found upon the record, and there is no valid exception to the process by which they have been found, the appellate court is in a situation to pronounce the appropriate final j udgment, and that in such a case it would be an act of supererogation to send the case back for a refinding of the facts, which have already been duly found. But the difficulty in the case at bar is that the facts have been neither duly found nor finally established, and that upon the point in dispute further evidence may perhaps be given upon a new trial on both sides. In the absence, therefore, of a stipulation or consent to the effect that the rejected evidence should be considered in connection with the other evidence, and that upon the whole case as then appearing all questions should be finally determined by us, the only disposition that can be made, is to order a new trial.
The judgment appealed from should be reversed, the order of reference vacated, and a new trial ordered, with costs to appellants to abide the event.
Speir, J., concurred.