BENJAMIN DIETZ, Appellant, *v.* JOHN T. FARISH, Respondent.

The parties negotiated for the purchase by defendant, and sale by plaintiff, of certain premises; they agreed upon the price, and a contract was signed in duplicate, to which P. attached his name as a witness. While the papers lay upon the table in the possession of P., defendant inquired as to the papers in respect to the title; plaintiff replied that he had none; defendant then suggested that before proceeding further the matter should be submitted to his counsel for approval, which was assented to by plaintiff. The parties went to the office of that counsel, and he being absent, the papers, with defendant's check for the sum to be paid down, were left with a clerk, with directions to deliver them if the counsel approved; he did not approve, but rejected the title as defective. Before said counsel had given his opinion plaintiff obtained one of the duplicates from the clerk and procured an acknowledgment thereof on the oath of the subscribing witness. In an action for specific performance, *held,* that the facts justified a finding that no contract was concluded; that all the acts of the parties were to be regarded as parts of one transaction, which was never consummated, as there was to be no contract until delivery, and no delivery until approval.

Also, *held,* that plaintiff acquired no advantage by procuring possession of the contract, or the subsequent proof thereof.

*Xenos* v. *Wickham* (L. R. [2 H. of L.], 296), distinguished.

(Argued December 19, 1879; decided January 13, 1880.)

APPEAL from judgment of the General Term of the Superior Court, of the city of New York, affirming a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term. (Reported below, 12 J. & S., 190.)

This action was brought to compel a specific performance of an alleged contract.

The facts appear sufficiently in the opinion.

*Samuel Hand* and *Lewis Sanders*, for appellant. The delivery of the contract deed became immediately binding on the parties, and operates as an estoppel in this action. (*Xenos* v. *Wickham*, L. R. [2 H. of L.], 296, 299–312, 324; *Mactier* v. *Frith*, 6 Wend., 112; *S. P. Farmers' Loan and Trust Co.* v. *Walworth*, 1 N. Y., 445; *Elmore* v. *Stone*, 1 Taunton, 458; *Adams* v. *Kers*, 1 Bosqt. & P., 360; *Atlantic Dock Co.* v. *Leavitt*, 54 N. Y., 35; *Lady Superior* v. *McNamara*, 3 Barb. Chy., 378; 2 R. S. [B's 6th ed.], § 30, p. 1145; 3 id. [Bank's 6th ed.], p. 671, § 116; 2 id., p. 1145, § 30; 1 id. [Edm. ed.], 148, § 150; *Currie* v. *Donald*, 2 Wash., 63 [Ct. of App. of Va.]; *Schrugham* v. *Wood*, 15 Wend., 546; 2 Wharton on Ev., § 930; Bigelow on Estoppel [2d ed.], 241, 283; *Siegfried* v. *Levan*, 6 Serg. & Rawle, 311; Cruise's Digest, 29, § 59; *Schrader* v. *Bouker*, 65 Barb., 608; *Frost* v. *Peacock*, 4 Edw. Chy., 680–696; *Goodrich* v. *Walker*, 1 Johns. Cas., 253; *Clark* v. *Rey*, 1 Harris & Johns., 323; *Fisher* v. *Kean*, 1 Watts, 279; *Garnous* v. *Knight*, 3 Barn. & Cres., 676, 679, 690; Shep. Touch, 59 [Tit. "Deed"]; *Braman* v. *Bingham*, 26 N. Y., 491–492; *Cocks* v. *Barker*, 49 id., 110; Co. Litt., 36 *a*; 9 id., 137 *a*; Cruise's Digest, 30, tit. 37, Deed chap. 2, § 58; *Simonston's Estate*, 4 Watts, 181.) The fact found that the suggestion to consult counsel was made after the certification, is conclusive against the defendant. (*Craighead* v. *Peterson*, 71 N. Y., 279, 286; *Wheaton* v. *Fay*, 62 id., 283; *Braman* v. *Bingham*, 26 id., 492.) Payment of the first installment was in performance of the contract. Therefore proceeding to make it was an undeniable affirmance of its operativeness and the prior intent. (*Worrall* v. *Munn*, 5 N. Y., 244, 245; *Ballard* v. *Walker*, 3 Johns. Cas., 60.) This contract was valid and irrevocable as soon as signed. (*Worrall* v. *Munn*, 5 N. Y., 243; *Evans* v. *Wells*, quoted at

242; *Bowles* v. *Woodson,* 6 Gratt.. 78· *Parrill* v. *McKinley,* 9 id., 1.)

*W. W. Macfarland,* for respondent. Something more is necessary to the constitution of a contract than the mere signing of the names of the parties to a written or printed formula. The procreating fact is the intention of the parties, the absence of which no form or ceremony can supply. (2 Kent's Com., 477; Addison on Contracts, chap. 26, § 2; Chitty on Contracts, 1, 20; *Mactier* v. *Frith,* 6 Wend., 103, 112; Pothier on Obl. art. 8, § 1, p. 105; id., § 11, p. 106; 7th ed. [McLaren Book, III], part 1, p. 345; Addison ·on Conts., chap. 26, § 2, p. 937; *Pym* v. *Campbell,* 6 El. & Bl., 370; *Poor* v. *Petch,* 10 Exch., 613; *Davis* v. *James,* 17 Com. B., 13, 634.) Parol evidence is admissible to explain and qualify the delivery of a deed or other instrument in writing, even where it has been delivered by the grantor to the grantee. (*Gilbert* v. *N. Am. Fire Ins. Co.,* 23 Wend., 43; *Cocks* v. *Barker,* 49 N. Y., 107; *Jackson* v. *Perkins,* 2 Wend., 308; *Ford* v. *James,* 2 Abb. Ct. App. R., 159; *Watkins* v. *Nash,* L. R. [20 Eq. Cas.], 262; *Worral* v. *Munn,* 5 N. Y., 229.) A specific performance is always discretionary, and is never granted where there is any serious question as to the plaintiff's ability to make a perfect title. (Story's Eq. [Redf. ed.], §§ 740, 742, 758; Fry on Specific Performance, chap. 8; Chitty on Con. [Amer. ed.], 1496, 1497; *Garnet* v. *Macon et al.,* 2 Brock., 185, 244; *Hendrick* v. *Gillespie,* 35 Gratt., 193, 194.)

CHURCH, Ch. J. Under the findings of the trial judge, which we think were justified by the evidence, his conclusion that no contract was concluded between the parties, cannot be disturbed. Elaborate opinions were delivered at both the Special and General Terms in which the principles and authorities applicable to the question are fully discussed and cited, and we deem it unnecessary to reiterate them.

The transaction was not an unusual one, and courts should.

construe the acts of the parties according to practical business rules. The parties met to negotiate a sale and purchase of a valuable house and lot, in the city of New York. After some negotiation they agreed upon the price ($58,000). The plaintiff who was the vendor then produced two blank contracts with a description of the premises filled in, and handed them over to Mr. Pell, who was present as a friend of the defendant, to complete the filling up as to terms, payments, etc. When this was done the parties signed the contract in duplicate, and Mr. Pell attached his name as a witness. While the papers lay upon the table in the possession of Mr. Pell, the defendant inquired of the plaintiff, if he had the papers in respect to the title. The plaintiff said he had no papers, not even his deed, and the defendant then suggested that before proceeding further, the matter should be submitted to his counsel for approval, which was assented to by the plaintiff, and the parties went to the office of the counsel, and finding him absent, left the contracts with a clerk, together with a check for $2,000 (the amount to be paid down), payable to the counsel's firm, with directions to deliver them, if the counsel approved them. Plaintiff subsequently obtained one of the duplicates from the clerk. Upon the return of the counsel, he not only did not approve the title, but expressly rejected it as defective. It seems to me that the most reasonable construction of this transaction is that all the acts of the parties were done subject to an actual delivery of the contract, and such delivery was intended to depend upon the happening of another event, to wit., the approval of the papers by the defendant's counsel, and that event never happening, no contract was made or intended to be made. The radical error which pervades the elaborate and critical argument of the learned counsel for the plaintiff, is in attempting to separate the formal acts of the parties, and consider them as separate and independent transactions, instead of regarding them all as parts of a single transaction, which was never consummated. He invites us to pause when the plaintiff

had signed the duplicates and passed them over to the defendant for his signature, and invokes the rule that the statute of frauds is satisfied with a writing signed by the grantor ; again when the defendant signed and handed them to Mr. Pell to be witnessed, it is insisted that the contract was mutually assented to and binding, and again when witnessed by Mr. Pell, it is urged that the *locus penitentiæ* was gone, and the defendant estopped from denying the contract. These are circumstances tending to prove the *animus contrahendi*, but they are not conclusive, and are subject to explanation, and the explanation is that they were inchoate and subject to an approval by counsel, and an actual delivery. If it had been expressly agreed preliminarily that the papers should be signed and witnessed, but should not be delivered or take effect until the papers were approved, no question could have been raised. The same thing may be inferred from the circumstances. It appears that the parties were comparatively strangers, that the defendant knew nothing of the title, and it would be natural, and according to the dictates of prudence for the defendant before concluding an absolute contract for the purchase of property at so large a price, to make inquiry at least as to the title, and from what took place it is inferable that this was the tacit understanding of the parties. The suggestion to procure the approval of the defendant's counsel, before the contract was consummated, was readily assented to by the plaintiff, from which it is evident that he did not regard it as then consummated, and from which also it may be inferred that the previous formalities were performed with reference to an approval, and to a full consummation by delivery.

The court, in *Kidner* v. *Keith* (109 E. C. L. R., 34), announced the well established rule. It said : "There is no doubt in point of law that where by express declaration, or from the circumstances, it appears that the delivery of a deed was not intended to be absolute, but that the deed was not to take effect until some contemplated event should

have happened, the deed is not a complete and perfect deed until that event has happened."

I have examined all the authorities cited, and do not find any that sustain the plaintiff's contention under the circumstances developed in this case. The case of *Xenos* v. *Wickham* (L. R. [2 H. of L.], 296), relied upon, falls far short of it. A policy of insurance was executed by two directors, and purporting to be signed, sealed, and delivered in the presence of the secretary, made in pursuance of written instructions by plaintiff's broker, but remained in the office to be called for, and it was held to be a valid and binding policy against the company, although not called for. The case was very fully considered, and was decided upon the principle that in such cases the intention of the parties is the controlling test; that the omission to deliver the physical possession of the instrument was not necessarily conclusive that no contract was made, and that whether there was a binding contract, depended upon the intention of the parties. BLACKBURN, J., said: "The mere affixing the seal does not render it a deed, but as soon as there are acts or words sufficient to show that it is intended by the party to be executed as his deed, personally binding on him, it is sufficient;" and this accords with all the authorities. The converse of this is also in general true, that if the circumstances show that there is no intention to make a present binding contract, the formal acts constituting partial or even entire execution, must yield to such intention.

The learned counsel both in their original and supplemental brief put great stress upon the proposition, that a binding contract may be made without a physical delivery of the instrument evidencing the contract. The case just cited is an authority to that effect, and there are others, but this abstract proposition is not decisive of this case. The cases holding this doctrine are exceptional, and require evidence, and very satisfactory evidence that the parties intended that the contract should be binding and operative. The general rule is the other way. In this case the finding and evidence

are that there was to be no contract until delivery, and that there was to be no delivery until the papers were approved. It is said that the plaintiff supposed that the contract was binding, and that counsel was consulted only as to the payment of $2,000. If this was so it would not aid the plaintiff; both parties must consent to make a binding contract. Although the parties agreed orally upon the terms of sale and purchase, the defendant certainly never intended to consummate the contract until he was satisfied as to the title; and as the contract never was consummated by delivery, there is no authority for holding him bound against his intention. Could the plaintiff have insisted upon the binding force of the contract at the time the suggestion was made to submit the matter to counsel? I think not; *a fortiori*, not after he expressly consented to such submission. The consent sheds light upon the character of the previous acts, and the understanding of the parties. The plaintiff acquired no advantage by procuring possession of the contract from the clerk, or the subsequent proof by Mr. Pell, although he may have acted in good faith, and no benefit was claimed for these acts on the argument. If any binding contract existed, it was made before the papers were left at the office of the counsel. I do not deem it necessary to review the numerous authorities cited by the respective counsel, nor to pursue the subject further, in view of the elaborate opinions below, with which we concur. There is no claim of any bad faith on the part of the defendant or his counsel, in rejecting the title as defective. A defective title was insisted upon as a defense to this action, and the court below decided that the title was so uncertain as not to be marketable. It seems to have been litigated simply upon the question whether the premises were located wholly within lot 80, of the common lands of the city of New York, as claimed by the plaintiff, or partly in lot 77, as claimed by defendant, without any investigation of the rights of the plaintiff, if the latter fact was true. I infer that the parties assumed in that event that the title was not such as a court

of equity would compel a party to accept in an action for a specific performance. As to the location, there was a serious conflict of evidence between one set of maps, supported by one surveyor, and another set of maps supported by another surveyor, and an actual survey by the latter. It is unnecessary to pass upon the merits of this question.

The judgment must be affirmed.

All concur.

Judgment affirmed.