GEORGE W. MILLER

*v.*

JAMES A. RICE *et al.*

*Filed at Ottawa May 14, 1890.*

1. CONTRACTS—*time of the essence of the contract.* Time is originally of the essence of a contract, in the view of a court of equity, whenever it appears to have been part of the real intention of the parties that it should be so, and not to have been inserted as a merely formal part of the contract. This intention may be expressed, or it may be implied from the nature or structure of the contract. Time may be of the essence as to any one or more of the terms of the contract.

2. The materiality of time may be implied when hardship will result from considering time immaterial, as, when delay in performance would involve one of the parties in serious liability or loss; or where the subject matter of the contract is, from its nature, subject to considerable and frequent variations of price; or where the object of the contract is a commercial enterprise, and the property purchased, whether land or goods, is for the prosecution of trade; or when the contract is for the purchase of property for immediate use, as of a house, with the intention of immediately occupying it as a residence; or when the contract contains stipulations in favor of one party, and not of the

other, or is in anywise unilateral, and in a great variety of other cases. involving similar equitable principles.

3. A letter containing an offer to sell land, concluded with a clause for the making of a deed "as soon as the above terms are complied with, but not later than ten days from the date hereof, except at the option of the undersigned:" *Held*, that such clause, if it had not been modified, would have made time of the essence of the contract.

4. But when the person to whom the offer of sale was made, objected to the clause limiting the time for his performance to ten days, the proposition to sell was modified by a subsequent letter, so as to give a reasonable time for examining the title, etc., which was accepted : *Held*, that the offer was to convey the land to the defendant upon his compliance with the terms proposed, but not later than the expiration of a reasonable time for the examination of the title, etc., and that time was material.

5. SAME—*notice to perform—within a fixed time—extension of time by agreement.* Where time is not originally made of the essence of a contract, such provision may be in effect engrafted upon the contract when there has been unnecessary delay or default in performance, by notice from the other party insisting upon performance at a fixed time, which is a reasonable time, under the circumstances of the case.

6. The vendor and purchaser not having closed their contract for the sale of land by making deed and payment, the vendor tendered a conveyance and demanded payment, and the purchaser, being unable to pay on that day, asked until noon of the following day to get the money, and agreed that if, at that time, he was unable to perform, he would surrender his rights under the contract and execute a quitclaim deed to the vendor. The latter thereupon served upon him a notice to pay by noon of the following day, and that upon failure to do so his rights under the contract would terminate : *Held*, that as the time for performance named in the notice had been expressly assented to, the reasonableness of the notice could not be fairly questioned.

7. If the purchaser of land agrees with the vendor, in consideration of the postponement of the time of payment until the next day at noon, that if he fails to perform at that time he will abandon and surrender his rights under the contract, or, in other words, will assent to a rescission, such agreement will be binding, and on his failure to perform at the time fixed, his assent to the rescission will become operative.

8. REMOVING CLOUD UPON TITLE—*requiring a quitclaim as to opposing title.* It is proper, on bill to remove an apparent title standing upon the records, as a cloud on the title, to require the defendant to give the complainant a quitclaim deed for the land, and on his failure to do so to direct the clerk of the court to make one for him, and to cancel the opposing interest of the defendant.

APPEAL from the Superior Court of Cook county; the Hon. EGBERT JAMIESON, Judge, presiding.

Mr. CONSIDER H. WILLETT, for the appellant:

Time was not of the essence of the contract made by Miller with Rice and Conley, and recorded April 14, 1888. Waterman on Specific Per. p. 564, sec. 462; *De Camp* v. *Feary,* 5 S. & R. 323; *Younger* v. *Welch,* 22 Tex. 418; *Steele* v. *Branch,* 40 Cal. 11; *Glover* v. *Fisher,* 11 Ill. 666; *Keller* v. *Fisher,* 7 Ind. 718; *Brumfield* v. *Palmer,* 7 Blackf. 227; *Edgerton* v. *Peckham,* 11 Paige, 353; *Pinckney* v. *Hagedorn,* 1 Duer, 90; *Crittenden* v. *Drury,* 4 Wis. 205; *Reed* v. *Jones,* 8 id. 392; *D'Arras* v. *Keyser,* 26 Pa. St. 249; *Langan* v. *Thummel,* 24 Neb. 265; *Gibbs* v. *Champion,* 3 Ohio, 336; *Waters* v. *Travis,* 9 Johns. 450; *Jones* v. *Robbins,* 29 Me. 351; *Smoot* v. *Rea,* 19 Md. 398; *Quinn* v. *Reath,* 37 Conn. 16; *Van Campen* v. *Knight,* 63 Barb. 208.

Though time is not of the essence of a contract, yet it may be made so by giving reasonable notice that performance must be made within the reasonable time fixed by the notice. But if the time of performance fixed in such notice is not reasonable, it may be disregarded, and treated as though never given. Waterman on Specific Per. sec. 465; *Reynolds* v. *Nelson,* 1 Mad. 18; *Wiswall* v. *McGowan,* 1 Hoff. 138; *King* v. *Wilson,* 6 Beav. 124; *Snyder* v. *Spaulding,* 57 Ill. 480.

The notice of Rice and Conley, to Miller, of May 24, 1888, that the contract of sale would be forfeited if $8500 cash was not paid by noon of the following day, being an unreasonable and void notice, and the value and condition of the property remaining unchanged, the appellant should be allowed to complete the contract. *Taylor* v. *Brown,* 2 Beav. 180; *Begg* v. *Wisden,* 16 id. 239; *Benson* v. *Lamb,* 9 id. 582; *Mott* v. *Richards,* 22 id. 317; *McBride* v. *Weeks,* id. 533; *Hall* v. *Delaplaine,* 5 Wis. 206; *DeCamp* v. *Feay,* 5 S. & R. 323; *Glover* v. *Fisher,* 11 Ill. 666; *Shafer* v. *Niver,* 5 Mich. 253.

A party who is in default has no power to say the contract is at an end, and refuse to proceed with its execution. While such default remains, the rights of the party not in default exist, the same as when it was improperly sought to enforce a default. *Myers* v. *Gross*, 59 Ill. 436; Pomeroy on Specific Per. sec. 405, p. 477; *Longworth* v. *Taylor*, 1 McLean, 395; *Crabtree* v. *Levings*, 53 Ill. 530; Waterman on Specific Per. p. 597, sec. 416.

The alleged rights of Tyrrell were acquired while this litigation was pending, and therefore subject to appellant's rights. The attempt to complicate appellant's rights by a sale to him during such litigation, should not become, as the court below held, the foundation for equitable relief. *Steele* v. *Branch*, 40 Cal. 8; *Smoot* v. *Rea*, 19 Md. 398; *Glover* v. *Fisher*, 11 Ill. 666; *Barnett* v. *Cline*, 60 id. 205; *Reed* v. *Reber*, 62 id. 240.

Even if the decree declaring the contract to be a cloud, was proper, yet the decree should not require Miller to convey his interest. *Barnett* v. *Cline*, 60 Ill. 205; *Reed* v. *Reber*, 62 id. 240.

Where time admits of compensation, as it perhaps always does where lapse of it arises from the non-payment of money at a particular day, it is never an essential part of an agreement. *DeCamp* v. *Feay*, 5 S. & R. 323; *Younger* v. *Welch*, 22 Tenn. 418; *Glover* v. *Fisher*, 11 Ill. 666; *Pinckney* v. *Hagedorn*, 1 Duer, 90.

The general rule of equity is, that time is not of the essence of the contract. *Steele* v. *Branch*, 40 Cal. 11; *Brumfield* v. *Palmer*, 7 Blackf. 227; *Keller* v. *Fisher*, 7 Ind. 718; *D'Arras* v. *Keyser*, 26 Pa. St. 249.

A failure to pay on the day will not work a forfeiture, as here time is not of the essence of the contract. *Clark* v. *Lyons*, 25 Ill. 105; *Snyder* v. *Spaulding*, 57 id. 480.

Where time is not of the essence of a contract, it is sufficient if the vendor has a good title when the decree for specific performance is entered. Waterman on Specific Per. 564.

It is undeniably true, and the books are full of authorities to prove the proposition, that in ordinary cases time is not of the essence of the contract, and that a mere default of payment at the day agreed on, will not, in such case, without some change in the circumstances of the property or of the parties, occasioned by such delay, authorize a court of chancery to deny a specific performance.  *Edgerton* v. *Peckham*, 11 Paige, 353.

Ordinarily, courts do not consider it essential that the purchase money should be paid at the precise day appointed for the payment, when the parties do not make the time of payment essential in the contract itself, and where the court has power to compel the purchaser to make ample compensation to the seller for the delay.  *Reed* v. *Jones*, 8 Wis. 392.

If the vendor retains the legal title to secure the purchase money, it is considered, in equity, that time is immaterial. *Waters* v. *Travis*, 9 Johns. 450.

The time of payment is regarded, in equity, as formal, and as meaning only that the purchase shall be completed within a reasonable time, and substantially according to the contract, regard being had to all the circumstances.  *Jones* v. *Robbins*, 29 Me. 351.

Mr. Joseph Wright, for the appellees:

Appellant has cited a number of cases in support of the proposition that time was not of the essence of the contract, which are not in point.  Time is generally essential when the contract is unilateral, or when there is a want of mutuality. *Estes* v. *Furlong*, 59 Ill. 298 ; *Maughlin* v. *Perry*, 35 Md. 352 ; *Magoffin* v. *Holt*, 1 Dew. 95.

So when it appears to have been the intention of the parties. And it may be express or implied.   Fry on Specific Per. 512.

Time may be made essential by notice from the other party insisting upon performance in the time fixed.  *Bullock* v. *Adams*, 20 N. J. Eq. 367 ; *Rogers* v. *Saunders*, 16 Me. 92.

Change in the value of the land is a circumstance of weight. *Braskin* v. *Gratty,* 6 Wheat. 539.

The following are cases showing where a specific performance will be denied: *Shortall* v. *Mitchell,* 57 Ill. 161; *Ditto* v. *Harding,* 73 id. 117; *Clark* v. *Lyons,* 25 id. 105; *Murphy* v. *Lockwood,* 21 id. 611.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, brought by James A. Rice and Eli Conley, of Elkhart, Indiana, against George W. Miller, of Chicago, to remove a cloud from the complainants' title to the west half, of the south-west quarter, of the south-west quarter, of the south-west quarter, of section 17, township 38, north, of range 14, east of the 3d principal meridian, in Cook county. It appears that, in the course of a negotiation between the complainants and the defendant for the sale of said land by the former to the latter, Rice, one of the complainants, wrote to the defendant the following letter:

"ELKHART, IND., *March 15, 1888.*
"*Dr. G. W. Miller, Chicago, Ill.:*

"DEAR SIR—The party who is interested with me in the five acres at the north-east corner of Ashland avenue and Sixty-third street, and to whose opinion I have deferred in the matter of sale of the land, has finally concluded with me to sell the land for ($8500) eight thousand five hundred dollars cash. This was the last offer or proposition that you made. If you have not bought as yet, and still desire to buy this property, you can have it at the above price. If you should conclude to accept this proposition, you could name a time and place in your letter in reply to this, where we could meet you and close the matter up.

"Very respectfully yours,
J. A. RICE, *P. O. Box 604.*"

On receiving said paper, the defendant wrote thereon the following words:

"CHICAGO, ILL., (9 A. M.,) *March 16, 1888.*

"The aforesaid proposition, viz., eight thousand five hundred dollars ($8500) cash, for said parcel of land, is hereby accepted.

GEO. W. MILLER."

Afterwards, both of the complainants, by way of making a more formal statement of their proposition, wrote to the defendant as follows:

"ELKHART, IND., *March 22, 1888.*

"*Dr. George W. Miller, Chicago, Ill.:*

"The undersigned, owners of W. $\frac{1}{2}$ of S. .W. $\frac{1}{4}$ of S. W. $\frac{1}{4}$ of S. W. $\frac{1}{4}$, Sec. 17, T. 38, R. 14, being five acres, more or less, at N. E. cor. 63d St. and Ashland Ave., in town of Lake, Cook Co., Ill., propose and agree to sell and convey said tract of land for eight thousand five hundred dollars ($8500) cash, payable on the delivery by the undersigned of a warranty deed, duly executed, for said land. Our abstract or examination of title of said land now in the hands of said Miller is to be brought down to date at the expense of said Miller, and all the expense therefor is to be paid by said Miller. Said land will be deeded to said Miller, or such person as he shall designate, as soon as the above terms are complied with, but not later than ten days from the date hereof, except at the option of the undersigned. JAMES A. RICE.

ELI CONLEY."

On receiving this letter the defendant wrote thereon the following words:

"CHICAGO, *March 24, 1888.*

"Except ten days, this proposition accepted.

GEO. W. MILLER."

This qualified acceptance of their proposition having been communicated to the complainants, they wrote to the defendant again as follows:

21—133 ILL.

"ELKHART, IND., *March 24, 1888.*
"*Dr. G. W. Miller, Chicago, Ill.:*

"DEAR SIR—We mentioned ten days as a limit, because we thought that would be sufficient time to satisfy yourself as regards title, etc., and because several have written in regard to the property, wanting price and terms, and we have kept the matter in abeyance until we could arrange the matter with you, if possible. For that reason we would like to conclude the matter as soon as we can. We are acting in good faith, and are willing to give time for examination of title, etc.; but, conclude the matter as soon as you can, and write us.

"Respectfully,                                JAMES A. RICE,
                                                    ELI CONLEY."

The complainants claim by their bill, in substance, that the defendant, after obtaining from them said contract, delayed and procrastinated the fulfillment of it on his part on one pretext and another, until they became convinced that he had neither the willingness nor the ability to perform it, and that after waiting a reasonable time, they demanded performance on his part, and on his failure to perform, they elected to rescind the contract, and sold the land to another purchaser. The evidence shows that on the 22d day of March, 1888, they furnished the defendant with their abstract of title; that two days afterward he delivered it to a firm of abstract makers to be continued, and that on the 4th day of April following he received it back from the abstract makers brought down to date. On examining it he found two apparent objections to the title as thereby shown, first, it did not appear whether a certain remote grantor of the complainants, at the time he executed his deed, had a wife or was single, and, second, a certain mortgage on said land did not appear to have been discharged of record. After some inquiry among those who knew said grantor, the defendant ascertained and obtained proof by affidavit that, at the time of making said deed, he was

unmarried. On the 4th day of April the defendant wrote the complainants that the abstract men had that day delivered to him the completed abstract, and on the 7th day of April the complainants, having heard nothing farther from him, and having become satisfied, as they claim, that he was not intending in good faith to perform the contract on his part, entered into an agreement to sell said lands to one Tyrrell at the same price, and executed to Tyrrell a contract of sale. The defendant, learning of the execution of that contract, took the letters which constituted his contract with the complainants to the recorder's office and placed them on record, the contract with Tyrrell having been recorded a few minutes before the defendant's arrival at said office. On the 16th day of April, the complainants, in reply to a letter received by them from the defendant, wrote to him as follows:

"ELKHART, IND., *April 16, 1888.*
"*Dr. G. W. Miller, 2719 State St., Chicago, Ill.:*

"DEAR SIR—Yours dated April 13, (post-marked 14,) was received to-day, and contents noted. Since April 4, till to-day, we have heard nothing whatsoever from you, and as you put up no money to assure us your customer meant business, we concluded to place the property in the hands of H. C. Jacobs, and gave him an order for the abstract sent you, and withdraw our offer, as we had a perfect right to do under the proposition made to you April 2, 1888.

"We have already lost several favorable opportunities of sale by waiting on you and your customer to get down to business. Mr. Conley said we would wait no longer, as you had ample time to close up the matter if your customer meant business. According to your own statement in your letter of April 4, 1888, you received the completed abstract on that day, and you knew that a large number of acres adjoining had been sold and re-sold on essentially the same title, which was regarded by good judges as unquestionable, and there was no cause whatever for any longer delay. I could come to no other con-

clusion than that of Mr. Conley, and so last week we turned over the matter to Mr. Jacobs, and authorized him to demand of you our abstract, and he has presented our order and request for you to deliver the same. We waited the long time we did upon you so that there could be no reasonable cause of complaint on your part, and that you might have ample opportunity to sell your alleged customer the property, if he had any *bona fide* intention of buying it.

"As you have already heard from Mr. Jacobs in relation to it, I will simply add, in conclusion, our negotiations in the matter are terminated and closed.

"Very respectfully yours, etc.,

J. A. RICE."

The complainants learning that the defendant still insisted that his contract was in force, came to Chicago on the 24th day of May, 1888, and met the defendant at the office of the complainants' agent. At that interview they produced and tendered to the defendant a proper release of the mortgage on said land; also a quit-claim deed from Tyrrell releasing his interest in said land under his contract with the complainants, and also a warranty deed executed by themselves conveying said land to Hopper, the defendant's son-in-law to whom he had requested them to convey it, and demanded of him the $8500 purchase money. The evidence is somewhat conflicting as to what was said at that time between the parties, but according to what seems to us to be the clear preponderance of the evidence, the complainants, after having been introduced to the defendant, said to him that they had come for the purpose of letting him have the property if he wanted it; that they had been delayed a long time, and wanted the matter settled then, and that if he wished the property there was his deed; that the defendant said that he was not prepared to pay the purchase money then; that his son-in-law was out of the city and might return the next day, and that he would like to have the time extended until the next day at noon, and

at that time he would take the property or execute a quit-claim deed to the complainants. The defendant was thereupon requested by the complainants to sign a paper embodying his agreement to perform the contract the next day at noon or quit-claim the property, but he declined to do so, saying that he would sign no paper, but would do as he agreed. A meeting between the complainants and defendant was then appointed for the next day at noon or shortly before that hour, but the complainants, before the defendant left, served on him the following notice:

"*Mr. G. W. Miller:*                "Chicago, *May 24, 1888.*

"You are hereby notified, in accordance with your request we will extend the time of payment until to-morrow noon. If the money ($8500) is not paid by that hour you will forfeit all rights under your letters of agreement, and all authority will be fully and finally revoked, and we shall expect you to execute a quit-claim deed to the premises in question, viz., the west half of the south-west quarter of the south-west quarter of the south-west quarter of section 17, township thirty-eight (38), range 14, east of the 3d P. M.        J. Addison Rice.

Eli Conley."

The parties met the next day according to their appointment, and the complainants there again told the defendant that his papers were ready, and demanded of him the purchase money, as they had the previous day. The defendant said that he was not able to raise the money or take the property at that time, and did not know when he could. He said his son-in-law might not be home in a week, and asked the complainants to extend the time until his return. This they refused to do, declining to give any further time whatever, and declared their contract with the defendant at an end.

The bill alleges that the recording by the defendant of his contract has created a cloud upon the complainants' title, and prays to have said cloud removed. The defendant answered

the bill, and also filed a cross-bill praying for a specific performance of his contract. The cause being heard on pleadings and proofs, a decree was entered dismissing the cross-bill for want of equity and decreeing in favor of the complainants on their original bill that said several letters and indorsements thereon originally constituting the contract for the sale of said land by the complainants to the defendant and recorded in said recorder's office, be set aside and declared to be null and void as against the complainants and their heirs and assigns, as a cloud upon their title, and that the defendant deliver said letters up to the clerk of said court to be cancelled, and that the defendant execute, acknowledge and deliver to the complainants a quit-claim deed conveying to them all his right, title and interest in said land, and that upon his neglect to do so within five days from the date of the decree, the clerk of said court execute such deed for him and in his stead.

The principal and indeed the determining question in the case is, whether the complainants, under the facts shown, were entitled to rescind their contract with the defendant, and whether the rescission which they attempted to make was effectual. The complainants at first proposed to give the defendant ten days from March 22, 1888, to examine the title and perform the contract on his part, but that time not proving acceptable to the defendant, they modified their proposition in such way as to give the defendant a reasonable time for the examination of title, etc., and in that form the proposition was accepted by the defendant.

In considering whether the attempted rescission was effectual, it is material to determine whether, under the circumstances of the case, time was to be regarded as of the essence of the contract. "Time is originally of the essence of the contract in the view of a court of equity, whenever it appears to have been part of the real intention of the parties that it should be so, and not to have been inserted as a merely formal part of the contract. As this intention may either be sepa-

rately expressed, or may be implied from the nature or structure of the agreement, it follows that time may be originally of the essence of a contract, as to any one or more of its terms, either by virtue of an express condition in the agreement itself making it so, or by reason of its being implied." Fry on Specific Performance, sec. 1045. Where time is not in express terms made of the essence of the contract, its materiality may be implied from a variety of circumstances. Thus, where hardship would result from considering time immaterial, as where delay in performance would involve one of the parties in serious liability or loss; or where the subject matter of the contract is from its nature subject to considerable and frequent variations of price; or where the object of the contract is a commercial enterprise, and the property purchased, whether lands or goods, is for the prosecution of trade; or where the contract is for the purchase of property for immediate use, as of a house with the intention of immediately occupying it as a residence; or where the contract contains stipulations in favor of one party and not of the other, or is in any wise unilateral; and in a great variety of other cases involving similar equitable principles, courts of equity have been disposed to imply from the circumstances an intention to make time material.

In the present case there is no express stipulation which in terms makes time of the essence of the contract, but the subject matter and circumstances are such as to call at least for a considerable degree of strictness in the matter of requiring performance within the time stipulated. The manifest object of the vendors in putting their land upon the market was, to convert it immediately into cash. Other purchasers were ready to take it on the terms offered, and by reason of the delays of which the defendant was guilty, they seem to have lost other opportunities to dispose of it. The defendant had paid nothing, and had furnished no security for the performance of the contract on his part except his personal responsibility, and that responsibility was not pledged by any affirmative

agreement on his part, but only by such personal liability as could be implied from a mere acceptance of the complainants' offer. Furthermore, the defendant is shown to have been a man of little or no pecuniary responsibility. He was the owner of no real estate, and the evidence leaves it, to say the least, exceedingly doubtful whether he was the owner of any considerable amount of property of any kind.

A fair conclusion may also be drawn from the terms of the letters which embody the contract between the parties, that it was not the intention of the complainants to give the defendant an indefinite time for performance. By the letter of March 22, 1888, the one in which the complainants' offer was first formally stated, it was provided that the land should be conveyed to the defendant as soon as the terms of the offer were complied with, "but not later than ten days from the date hereof." If this clause had remained in the contract as finally agreed upon, there can be little doubt that it would have made time of the essence of the contract. The defendant not wishing to assent to that limitation as to time, the proposition was modified by the letter of March 24. In that letter the complainants, after explaining that they had mentioned ten days as a limit because they thought that would be sufficient time for the defendant to satisfy himself as regards title, etc., and because they had received letters from other parties making inquiries as to their price and terms for the property and had delayed answering those letters while the matter of a sale to the defendant was pending, and for that reason they would like to conclude the sale as soon as possible, they expressed their willingness to modify their previous proposition to the extent of giving time, i. e., a reasonable time, for examination of title, etc. In this form the proposition was accepted by the defendant. When we construe these two letters together, it seems plain that the offer was, to convey the land to the defendant upon his complying with the terms proposed, "but not later than the expiration of a reasonable time for the ex-

amination of title," etc. It would thus appear that the terms, subject matter and circumstances all concur in furnishing strong grounds for holding that, by the contract as originally agreed upon, time was made material.

But it is urged that even if this be so, the complainants, by entering into an agreement with Tyrrell, before a reasonable time for examining the title had elapsed, to sell said land to him, put it out of their power to convey a good title to the defendant, and thus cut themselves off from the right of rescission for non-performance by the defendant at the time stipulated. In this we think the defendant is correct. The complainants, in order to avail themselves of time as of the essence of the contract, and to be in a position to rescind in case of non-performance by the defendant at the time agreed upon, should themselves, at that time, have been ready and able to perform by conveying to the defendant a good title. This they could not do so long as their contract with Tyrrell was outstanding. Whether then time was originally made of the essence of the contract or not, it must be admitted that the attempts of the complainants to rescind the contract made prior to their interviews with the defendant on the 24th and 25th of May were ineffectual. The rights of the parties must therefore depend upon the legal effect to be given to what took place at those interviews.

When the parties met on the 24th of May, the complainants had obtained a release of the Tyrrell contract and were in a position to make to the defendant a perfect title. They thereupon tendered to the defendant a conveyance, accompanied with releases of all outstanding rights, and demanded payment, and the defendant, being unable to pay on that day, asked until noon of the following day to get the money, and agreed that if at that time he was unable to perform, he would voluntarily surrender his rights under the contract and execute a quit-claim to the complainants. The complainants thereupon, in connection with their consent to give him until the

next day upon the terms thus proposed by him, served upon him the notice to pay by noon of the following day, and that upon his failure to do so, his rights under the contract would terminate.

This notice was doubtless given by the complainants with a view of attempting to avail themselves of the rule, that where time is not originally of the essence of the contract, a provision making it so may be engrafted upon the contract, where there has been unnecessary delay or default in performance, by notice insisting upon performance at a time fixed. *Bullock v. Adams' Executors*, 20 N. J. Eq. 367; Fry on Specific Performance, sec. 1062, *et seq.* It is said however that the notice was ineffectual for that purpose for two reasons: 1., that the time given for payment was unreasonably short, and, 2., that there had been no such unnecessary delay or default of payment as would give place for the operation of the rule. To these objections it may be replied, that the time given was precisely what the defendant asked and all that he asked. If then under other circumstances the time given would have been unreasonable, the defendant having agreed that if the time of performance should be extended until noon of the following day, he would perform at that time or surrender his rights under the contract, it is difficult to see how he can now insist that the time limited by the notice, being the period of delay which he had himself suggested, was unreasonable. Whether there had been an unnecessary delay or default in payment or not, it is clear that the complainants, at the interview on the 24th of May were insisting that there had been, and that in view of that insistence, the defendant asked for and obtained one day's delay. The fact that the defendant was in default did not seem at that time to be questioned, but was rather conceded, and such being the case, it is difficult to see how it can be questioned now.

But it is unnecessary for us to decide whether giving the notice was of itself sufficient to engraft a provision upon the

contract making time of the essence of the contract, since the rescission by the complainants on the next day may be sustained on the ground of consent and agreement. It was competent for the defendant to agree, in consideration of the complainants' postponing performance until the following day at noon, that if he failed at that time, he would abandon and surrender his rights under the contract, or, in other words, consent and agree to a rescission of the contract. That he made such agreement is shown, we think, by a clear preponderance of the evidence, and that the agreement was upon a sufficient consideration can not be disputed. He failed to perform at the time stipulated, and the complainants thereupon rescinded the contract as the defendant had agreed they might. A rescission by mutual consent of the parties thereby became operative, and we think it clear that such rescission was binding and effectual.

The defendant insists that it was error to require him to execute to the complainants a quit-claim deed of his interest in said land. That was a proper mode of removing the cloud from the complainants' title, and was a provision which could in no way prejudice the defendant. If he does not execute the deed himself, it may be executed on his behalf by the clerk of the court, and its effect will be merely to cancel upon the record the apparent interest in said land vested in the defendant by said contract.

We are of the opinion that the decree is the proper result of the evidence in the case, and it will therefore be affirmed.

*Decree affirmed.*