[No. 12168.    Department One.    January 26, 1915.]

BROWN BROTHERS LUMBER COMPANY, *Appellant*, v. PRESTON
MILL COMPANY, *Respondent*.[1]

VENDOR AND PURCHASER—CONTRACT—DELIVERY.  Delivery of a contract for the sale of land is not shown by the fact that the vendor handed it to the vendee with other papers, except the executed deed, for examination, and for which the vendor was to receive certain other lands, cash, and notes, and no tender of performance was made by the vendee for months.

SAME—DELIVERY—PRESUMPTIONS—INTEREST.  The *prima facie* evidence of delivery from the fact of possession of an executory contract for the sale of land is less stringent than in the case of executed contracts; and whether there was a complete delivery depends on the intention of the parties, construed according to practical business rules.

SAME—CONTRACTS—ACCEPTANCE — REASONABLE  TIME — ESTOPPEL. Where a deal for the sale of timber lands required the vendee to purchase the interest of a third party in other lands to be given in exchange, notwithstanding which the vendee was notified that the deal ought to be closed within a month, and for three months the vendor constantly tried to have the deal closed, when it notified the vendee that it must be closed within one week, a reasonable time was given to the vendee to close the deal, in the absence of any explanation or excuse for the long delay; hence the vendor was not estopped from refusing to carry out the contract three weeks later when the vendee, having acquired the third party's interest, finally tendered performance.

Appeal from a judgment of the superior court for King county, Smith, J., entered February 17, 1914, upon findings in favor of the defendant, granting specific performance, in an action to quiet title.   Reversed.

*Alexander & Bundy*, for appellant.

*Corwin S. Shank* and *H. C. Belt*, for respondent.

CHADWICK, J.—The plaintiff, a Wisconsin corporation, commenced this action to quiet title.   The defendant an-

[1]Reported in 145 Pac. 964.

swered, alleging facts which it thought entitled it to specific performance, and prayed for that relief. The court entered a decree granting the relief asked by the defendant. Plaintiff has appealed.

The admitted facts are these: On the 21st day of August, 1911, Charles J. Erickson and August Lovegren, with their wives, were the owners of certain land in Mason county. Erickson was the president of the respondent corporation. At the same time, the appellant owned certain timber, and easements for its removal from the land, in King county, situated near the respondent's plant, upon which it owed the sum of $4,750 to the owners of the land on which the timber stood. The appellant was also under obligation to pay the taxes assessed against the land and timber until 1920. One R. D. Brown, who resided in Seattle, was its local agent. On August 18, 1911, Brown wired the appellant: "Preston offers eighteen, eight cash, balance five per year. Answer;" meaning that the respondent offered to pay $18,000 for the King county timber, $8,000 cash, balance $5,000 per year. The offer also included, although not expressed in the telegram, the Mason county land then owned by Erickson and Lovegren. On the same day the appellant wired Brown: "Accept Preston offer, eight cash, balance five per year. Will forward papers;" and wrote Brown a letter confirming its telegram, and inclosing an abstract of the King county land, duplicate originals of contract for a deed to the respondent of the timber both of which it had executed, two notes for the signature of the respondent, and duplicate originals of deed to the respondent, one of which it had executed and acknowledged. It advised Brown: "We also think it necessary that we should have an indemnity bond . . . for at least $5,000" to secure the payments to become due to the owner of the land. "If papers are O. K., please turn over to Preston Mill Company one copy of the contract for deed which is executed, and one copy of the deed itself which is not executed. All other papers to be re-

turned to us." By the terms of the contract, the appellant agreed to sell the timber and easements to the respondent for $18,000, $8,000 cash, $5,000 payable in one year and $5,000 payable in two years, the deferred payments to bear interest at the rate of seven per cent per annum, interest payable annually, and to be evidenced by two promissory notes to be signed by the respondent, payable to the order of the appellant at the Merchants State Bank of Rhinelander, Wisconsin. The contract further provided that the respondent should pay all taxes levied against the land and timber, beginning with the year 1911, and make all payments to become due from the appellant to the owner of the land, aggregating about $4,750.

The appellant's agent Brown testified that, on or about September 1 he delivered to Erickson, as the president of the respondent, for examination, one copy of the contract which had been executed by the appellant, and a copy of the deed, two promissory notes for the signature of the respondent, and the appellant's letter of instructions of date August 21. He further testified that, on the 24th day of August, he learned that Lovegren had an interest in the Mason county land. He said Erickson said that it might take a month to get title from Lovegren, and that he told Erickson the appellant was "very anxious" to have the deal closed as soon as possible, and that "I did not think the negotiations ought to go over a month." On September 7, the appellant wrote Brown, inquiring "How about the Preston Mill Company deal? Is it going through this time or are they refusing to close?" On September 21 it again wrote Brown: "What if any information can you give us regarding the Preston Mill Company deal? Did they refuse to close?" On September 24, Brown wrote the appellant that he had received and forwarded the abstract of the Mason county land to have it brought to date, saying in addition: "This Preston deal has been dragging in bad shape." On October 12, Brown wrote the appellant that Erickson had not bought Lovegren's in-

terest in the Mason county timber; that in order to close the trade, the respondent would have to pay Lovegren $7,000 therefor; that he had had the abstract examined and found the title good, and that he had "been pushing them to come to some settlement." He further advised that Erickson had made him an offer that morning of $28,000 cash for the timber. On October 17, the appellant wrote Brown acknowledging his letter of the 12th inst., and directing him to have the King county timber cruised. On October 20, it again wrote Brown, to the effect that it was awaiting "with considerable interest" the result of the cruise on the King county timber. On November 3, Brown wrote the appellant: "Erickson was in again today, saying he had a definite answer from Lovegren today saying he would neither buy nor sell the Mason county lands. He says that he is going down to Oregon Monday to thresh it out with him. This means a long delay and possibly legal difficulties before this deal goes through. In the meantime I expect to have the boys' cruise on it by the first of this next week." On November 13, Brown wrote the appellant, inclosing a summary of the cruise of the King county timber, stating that it ran over one hundred per cent higher than he had estimated, and that "Friday afternoon [about November 10] Mr. Erickson was in and stated that the deed was on the way to Lovegren's wife to sign; that we ought to be able to close up this week." He further advised in this letter that he intended to inform Erickson that if the deal was not closed by the 20th he would decline to close it at all. His testimony shows that, on that date, he left a note to that effect in Erickson's office, and that he advised him to the same effect verbally the next day. On November 17, the appellant wired Brown: "Estimate received. Withdraw Preston timber from market until further advice." On November 18, the appellant wrote Brown, confirming its telegram of the 17th. It further advised him: "Should the deal be closed before receiving this telegram, we of course would have to stand pat on the proposition." On

December 13, the respondent, through Erickson, its presi-
dent, tendered the appellant $8,000 in gold coin, two prom-
issory notes executed by the respondent conformably to the
contract, and a deed from Erickson and wife to the Mason
county timber, and demanded that the appellant comply with
the terms of the contract upon its part.   Upon the same day,
it signed the duplicate contract and filed it for record in
King county.

Mr. Erickson admitted upon the witness stand that Brown
had notified him, on or about the 14th of November, that the
deal had to be closed by November 20th.   He says he did not
remember the precise date, but that it may have been about
November 14.   It appears that, about the 10th of November,
Erickson received a deed from Lovegren, but that it had not
been signed by Lovegren's wife.   He thereupon returned it
for her signature, and it was returned to him with her sig-
nature about the first of December.   The Lovegrens lived
in Oregon about forty miles southwest of Portland.   There is
nothing in the record to indicate any real cause for the delay,
unless it was because Lovegren did not want to sell, or Erick-
son was not willing to pay him the price he demanded. Erick-
son admits that Brown was continually hurrying him to
close the trade.   He does not deny that he told Brown, about
the 3d day of November, that he had received a definite an-
swer from Lovegren, saying that he would neither buy nor
sell the Mason county land.   Nor does he deny that Brown
told him on the 24th day of August, that the deal ought to
be closed within a month.   Neither does he deny that, about
the 10th day of November, he told Brown that the deed was
on the way to Lovegren's wife, and that "we ought to be able
to close up this week."

Brown further testified that, on the 20th of November, at
the request of Erickson, he went with him to the office of
Erickson's attorney and that while there he, Brown, took
from the office of such attorney one copy of the contract, the
copy of the deed, the two notes, the abstract of title to the

King county timber, and his letter of instructions, and that Erickson refused to deliver one copy of the contract. At the time of the trial, Brown was in possession of all the papers, except the one copy of the contract. Erickson says that he delivered the abstract of title to Brown after he made the tender on December 13. In obedience to the appellant's direction, Brown had the timber cruised, and the cruising was completed about November 10. The cruise disclosed that the land contained much more timber than the appellant had theretofore estimated.

The court found, as a fact, that Brown delivered the contract to the respondent, and concluded, as a matter of law, that the appellant was estopped from calling off the deal. There is nothing in the record to support the finding that the contract was delivered. Brown testified that he handed it, with the other papers with the exception of the executed deed, over to Erickson for examination. All the circumstances of the case support this testimony. Under the contract, the appellant was to receive, in exchange for the timber, the Mason county land valued at $14,000, $8,000 in cash, and two promissory notes for $5,000 each. The respondent did not even make a tender of performance until the 13th day of December. It was then that it signed the notes and the duplicate contract and caused the contract to be recorded. The respondent did not know, at the time the papers were turned over to it, whether it could acquire the Lovegren interest in the Mason county land. It is obvious, therefore, we think, that Brown did not intend to deliver the contract.

On the question of delivery the respondent has cited *Richmond v. Morford*, 4 Wash. 337, 30 Pac. 241, 31 Pac. 513; *Jackson v. Lamar*, 58 Wash. 383, 108 Pac. 946, and *Clemmons v. McGeer*, 63 Wash. 446, 115 Pac. 1081. These cases announce the rule that the mere possession of an executed deed by the grantee is *prima facie* evidence of delivery, "which can be overthrown only by clear and convincing evidence."

The rule of evidence is less stringent, however, as applied to executory contracts. 13 Cyc. 564; *Hicks v. Goode,* 12 Leigh (Va.) 493; *Dietz v. Farish,* 79 N. Y. 520.

The *Dietz* case was quite similar to this. It was an action to compel a specific performance of a contract. The court said that the transaction was not an unusual one, and the court should construe the acts of the parties according to practical business rules. The same rule applies here, and by construing the acts of the parties according to practical business rules, we have no doubt that there was no delivery of the contract. Whether there was a complete delivery depends upon the intention of the parties, and this intention must, of course, be ascertained from what was said and done, and from all the known attendant circumstances. *Matson v. Johnson,* 48 Wash. 256, 93 Pac. 324, 125 Am. St. 924.

The real question in this case is one of estoppel: Is the appellant estopped upon the facts stated from refusing to carry out its contract? Mr. Erickson testified that he told Brown before he received the papers that, if the bid was not going through, he did not want to buy Lovegren's interest. This Brown does not deny. The correspondence between Brown and his principal and his oral testimony both show that he knew, as early as August 24, that Erickson would be required to acquire the Lovegren interest in order to carry out the transaction. It must not be forgotten, however, that he told Erickson that the deal ought to be closed within a month, and that Erickson told Brown on the 10th of November that he ought to be able to close the deal within a week. On the 13th day of November, Brown gave Erickson notice that the deal must be closed by the 20th. This, we think, under all the circumstances, was a reasonable time. Indeed, there is nothing in the record to indicate, as we have said, that with due diligence Erickson could not have acquired the Lovegren interest long prior to November 20. Lovegren and his wife were living within two hundred miles of the city of Seattle where both Erickson and Brown resided. Erickson

testified that there was nothing to delay closing the deal except acquiring the Lovegren interest. He did not undertake to explain why the Lovegren interest could not have been acquired much sooner. The rule is: "If the offer does not limit the time for its acceptance, it must be accepted within a reasonable time. If it does, it may, at any time within the limit and so long as it remains open, be accepted or rejected by the party to whom, or be withdrawn by the party by whom, it was made." *Minneapolis & St. L. R. Co. v. Columbus Rolling Mill Co.*, 119 U. S. 149.

The most favorable view that can be taken for the respondent is· that the appellant consented that it should have a reasonable time in which to acquire the Lovegren interest. *Colpe v. Lindblom*, 57 Wash. 106, 106 Pac. 634; *Miller v. Rice*, 133 Ill. 315, 24 N. E. 543. In the *Miller* case, it was said that, where time is not in express terms made of the essence of the contract, its materiality may be implied upon a variety of circumstances, such as where the subject-matter of the contract is from its nature subject to considerable and frequent variations of price, or "where the object of the contract is a commercial enterprise."

The judgment is reversed, with directions to grant the relief prayed for in the complaint.

MORRIS, C. J., CROW, and PARKER, JJ., concur.