LOUIS SCHWARTZREICH, Appellant, v. BAUMAN-BASCH, INC., Respondent.

(Supreme Court, Appellate Term, First Department, November, 1918.)

**Contracts — action to recover for breach of written contract of employment — evidence — verdict — judgments.**

Where in an action to recover for breach of a written contract of employment for a year at a certain weekly salary, there is evidence upon which the jury may properly base a finding that it was the intention of the parties to and that they actually did cancel a prior contract identical in all respects with the one sued on, except that the weekly salary was for a less sum, and the testimony of defendant's president that at the making of the second contract he demanded of plaintiff the surrender of his copy of the first contract is unexplained, and cannot be reconciled with any theory other than that the

witness understood that the parties had previously agreed that the first contract should be canceled, an order setting aside a verdict in favor of plaintiff and the judgment for the dismissal of the complaint will be reversed and the verdict and judgment in plaintiff's favor reinstated.

Mullan, J., dissents.

APPEAL by plaintiff from an order and judgment of the City Court of the city of New York, respectively setting aside the verdict of a jury and dismissing the complaint.

I. Gainsburg (I. Maurice Wormser, of counsel), for appellant.

Louis Boehm, for respondent.

BIJUR, J. Plaintiff, an employee, sued his employer, the defendant, for breach of a written contract of employment made October 17, 1917, to continue for twelve months, beginning November twenty-second, under which plaintiff was to receive a salary of $100 per week.

It appeared on the trial that on August 31, 1917, a written contract in all respects identical with the one sued upon had been made between the parties, except that the weekly salary was therein fixed at ninety dollars.

The trial was conducted with great care and exactness by both court and counsel, and the court in charging the jury repeatedly impressed upon it that " the test question is whether by word or by act, either prior to or at the time of the signing of the $100 contract these parties mutually agreed that the old contract from that instant should be null and void."

The jury having brought in a verdict in favor of plaintiff, the court, upon a motion of the defendant

to set the verdict aside "particularly on the ground that there is no evidence in the case of mutual consent or agreement to cancel the first contract at the time or prior to the execution of the second contract," ultimately granted the motion and dismissed the complaint under a reservation of power made at the trial, saying "that there was not sufficient evidence that the first contract was cancelled upon the making of the second one to warrant the jury's finding."

The contending parties agree fairly well on the substantive law applicable to the case. It is conceded that "A promise by one party to do that which he is already under a legal obligation to perform is insufficient as a consideration to support a contract." *Carpenter* v. *Taylor,* 164 N. Y. 171, 177; *Robinson* v. *Jewett,* 116 id. 40; *Seybolt* v. *N. Y., L. E. & W. R. R. Co.,* 95 id. 562; *Vanderbilt* v. *Schreyer,* 91 id. 392. It is true that appellant urges that the mere making of a subsequent agreement covering the same subject matter necessarily supersedes a prior agreement to the same effect, citing *Housekeeper Pub. Co.* v. *Swift,* 97 Fed. Repr. 290, and *McCabe Cons. Co.* v. *Utah Cons. Co.,* 199 id. 976, but I cannot find in the opinions in those cases that the question whether under such circumstances there is any consideration for the second contract was raised or suggested. The principle itself is too well established to be questioned. It has been applied to a case of an increase of salary similar to the one under consideration in *Cosgray* v. *New England Piano Co.,* 10 App. Div. 351.

On the other hand, in a leading case in this state (*Vanderbilt* v. *Schreyer, supra*), it was said at page 402: "It would doubtless be competent for parties to cancel an existing contract and make a new one to complete the same work at a different rate of compensa-

tion, but it seems that it would be essential to its validity that there should be a valid cancellation of the original contract. Such was the case of *Lattimore* v. *Harsen,* 14 Johns. 330." To the same effect is *Stewart* v. *Keteltas,* 36 N. Y. 388; *Hart* v. *Lauman,* 39 Barb. 410, 415, 416. And the question whether the earlier agreement had been canceled was expressly submitted to the jury and answered in the negative in *Harris* v. *Carter,* 3 El. & Bl. 559.

It is not necessary, as I view it, in the instant case to determine whether in order to sustain the second agreement the cancellation of the first must have taken place before the second was physically signed. My own opinion is that the time of signing the second contract is in this connection immaterial. A written agreement in order to become effective must be "delivered." The delivery may be informal and inartificial provided the intent is sufficiently demonstrated. *Dietz* v. *Farish,* 79 N. Y. 520; *Sarasohn* v. *Kamaiky,* 193 id. 203, 215. Similarly, the cancellation, or as it is sometimes called, the "rescission," of an agreement may be evidenced by implication quite as effectively as by express words. *Hart* v. *Lauman, supra.* And whether it has taken place must be determined by all the circumstances in evidence which affect it. *Matter of Chamberlain,* 146 App. Div. 583; affd., 204 N. Y. 665.

It seems to me, therefore, that if *after* the second agreement had actually been signed the parties had canceled the earlier one and the circumstances indicated the intent to redeliver, or make effective, the second agreement, there is no reason why that result might not validly be achieved. This nice question, however, need not be decided in the instant case; for as I read the record there was evidence upon which the jury

might properly have based its finding that it was the intention of the parties to, and that they actually did, cancel the first contract before the execution of the second agreement.

Plaintiff testified that he delivered the earlier contract to defendant's president, Bauman, at the time of the signing of the later one, and Bauman said to him: "You do not want this contract any more because the new one takes its place." Bauman testified that the first contract was not handed to him at the signing of the second contract, but that plaintiff tore off the signatures to the old contract in his presence, to which he made no objection, and that this was done "after I gave him the new contract. He tore the signatures off." As defendant-respondent interprets this testimony: "According to the plaintiff's version *after* the second contract was signed, plaintiff offered to Mr. Bauman his copy of the first contract and Mr. Bauman refused to accept it. According to defendant's version, after the contract was signed plaintiff offered Mr. Bauman his copy of the first contract; he refused to accept it, and thereupon plaintiff tore off the signatures at the bottom of his copy. Upon neither version of this occurrence can an agreement binding on the defendant be spelled out to cancel and rescind the first contract."

There might be some force in this contention if it could be successfully maintained that the only way to cancel an agreement was to return to the respective signatories the duplicates thereof, or to tear off the signatures, or even if such cancellation could be evidenced by those circumstances alone. The mere statement of the proposition, however, suffices for its own refutation. The question submitted to the jury was: Did the parties prior to the signing of the second

agreement cancel the first? It is conceded that the second agreement was drawn up by the defendant's president in the plaintiff's presence, and was thereupon signed by both parties. Bauman testified: "Q. And was it your understanding at the time you signed the paper and gave him one copy of it that you were giving him a contract for the year ending November, 1918 (the same term as was covered by the prior agreement)? A. That is right. Q. Did you receive any other paper at that time? A. No, sir. Q. Now, are you positive about that? A. Positive. Q. *Didn't you say to Mr. Schwartzreich* (plaintiff) *at that time that he should give you a paper that he had signed before?* A. *I did.* Q. Did he give it to you? A. Not at that time * * * later he gave it to me. The Court: Q. Was that contract of August? Plaintiff's counsel: A. That was the contract of August."

The testimony of Bauman that at the time of execution of the second contract he demanded from plaintiff the surrender of plaintiff's copy of the old agreement is not explained upon, and cannot be reconciled with, any other theory than that Bauman understood that the parties had previously agreed that the first contract be canceled. I am, indeed, inclined to believe that this evidence is well nigh conclusive to that effect; but in any event it furnished, together with the balance of the testimony, ample ground for the finding of the jury which I also think was correct.

The order setting aside the verdict and the judgment dismissing the complaint should be reversed and the verdict and judgment reinstated, with costs to appellant.

MULLAN, J. (dissenting). Of course it goes without saying that the parties *could* have canceled the old

contract and subsequently have made a new one. It is equally plain that they observed the *formalities* usual in making a contract, that is to say, they performed all the necessary gestures, and gave promise for promise, and made what would have been, except for the rule of law under discussion, the clearest example of a good contract. But were the parties capable, at the time, of making that particular contract? The answer to that question depends upon the answer to the primary question whether, when the second contract was made, the first contract was at an end.

A true cancellation of a contract leaves the parties to it *in statu quo ante,* that is, it leaves them in the same situation, in respect of the subject matter of the canceled contract, as if they had never seen or heard of each other. An agreement to cancel a contract is itself just as truly a contract as the contract it terminates, and its effect is to put an end to the contract, not merely that the contractors may thereby be enabled to enter into another contract with each other, but to leave them in perfect freedom to refuse to enter into any further contractual relationship with each other. Now, it may be theoretically possible for parties to a contract genuinely to terminate it by agreement, thereby intending to be free to refuse to deal with each other again, and then immediately and genuinely to change their minds and re-make the contract that was canceled, with a change of terms in favor of one party only. It is more reasonable, however, to assume that at least some few moments must elapse between the time when two given minds shall agree to cancel an existing contract, and the time when those same two minds shall decide to reinstate it, or again make one very like it. In the world of realities

lightning-fast changes of the kind that must have taken place to make the second contract good do not occur, and I feel quite safe in saying dogmatically that no such sudden revulsion occurred here; nor, indeed, do I understand that such an absurdity is claimed. Can it be seriously urged that the defendant was willing that the plaintiff should have any moment of freedom from the old contract — such freedom, I mean, as to give the plaintiff the right to seek employment from some one other than the defendant? I think it is very clear that the parties never intended to be free from each other, and that the new contract was a mere substitution for the old one, and that is precisely what the rule that refuses validity to a promise to pay more for what the promisee is already obligated to do, was intended to prevent.

There is nothing in this case that distinguishes it from the many cases in the books in which the ancient rule of law referred to was applied. The tearing up of one writing and the delivery of another writing in its stead are unimportant evidentiary details. Whenever the question of the rule's applicability has arisen, one contract has been in legal effect destroyed, and another contract, valid but for the rule, has been substituted for it. Quite obviously, the physical tearing of a piece of paper accomplishes nothing more than does an oral agreement to cancel. And I see no importance in the particular chronological order in which the various physical gestures occurred. Indeed, it seems to me that the entire argument of the appellant amounts to nothing more than a mere magnification of the value of immaterial details, and misses the real meaning and purpose of the doctrine we are dealing with. That the courts have shown no disposition to authorize any departure from the rule is shown

in a comparatively recent case (*Weed* v. *Spears,* 193 N. Y. 289) where it was said: "Thus, the only question presented in this case is whether a new promise by a party to do less than he has already agreed to do is a sufficient consideration for the promise of another party to do more than he is obliged to do. It seems to me that the negative answer to that question is so plain that there is no opportunity for doubt.

"Brief reference will be made to some of the arguments advanced in behalf of the respondents in favor of a different answer.

"It is said that mutual promises are a consideration for an executory agreement, and that the respondents having performed their executory agreement it will be a perversion of the rules of law to permit the defendant now to escape performance on his part. Of course there is no doubt that under ordinary circumstances mutual promises are a consideration one for the other, and such was undoubtedly the effect and value of the mutual promises of these parties contained in the original written agreement. The trouble with the last mutual promises relied on by the respondents is that they afford no consideration to the appellant when measured by the obligations already resting upon the parties."

The view I take makes it unprofitable to discuss any of the cases cited by my learned brother, except *Lattimore* v. *Harsen,* 14 Johns. 330, and *Harris* v. *Carter,* 3 El. & Bl. 559. In the *Lattimore* case the new contract that was held valid entirely changed the obligations of *both* parties, and so of course the rule in question had no applicability. It is true that in the English case the trial judge before making his decision asked for a special verdict from the jury, but just what he expected them to pass upon I cannot con-

ceive, for there, as here, there was no hiatus between the two engagements, only one party was advantaged by the change, and there was nothing to decide but a question of law.

For the reasons stated, I vote to affirm.

Judgment and order reversed, with costs to appellant.