## KOENIGSBERG v. BLAU et al.

(Supreme Court, Appellate Term.   November 30, 1909.)

1. EXECUTION (§ 471*) — WRONGFUL EXECUTION — OWNERSHIP OF PROPERTY SEIZED—EVIDENCE.

The mere possession by plaintiff of articles, title to which he claims under a bill of sale given by H. and left in escrow, when they were seized by defendants under an execution against H., is not evidence of title, plaintiff having obtained possession, not by virtue of the bill of sale, but by a special agreement by H., by which plaintiff was to remove the articles to a certain place, convenient for H.'s business, and apparently for his benefit.

[Ed. Note.—For other cases, see Execution, Cent. Dig. § 1401; Dec. Dig. § 471.*]

2. EXECUTION (§ 471*) — WRONGFUL EXECUTION — OWNERSHIP OF PROPERTY SEIZED—EVIDENCE.

Evidence in an action for seizure by defendant on execution, as the property of H., of articles claimed by plaintiff under a bill of sale from H., that, defendant having demanded security for a debt from H., it was agreed by plaintiff, defendant, and H. that plaintiff should surrender his mortgage on H.'s chattels; that H. should give plaintiff a bill of sale of the articles, and should assign to defendant as his security contracts of H. for work, which H. and plaintiff, working for H., should complete, the proceeds thereof to be paid to defendant; that the bill of sale should be delivered to defendant to hold in escrow till plaintiff had performed his agreement, and should then be delivered to plaintiff only on notice by H. to defendant that plaintiff had completed his said agreement; that the mortgage was surrendered, the contracts assigned to defendant, the bill of sale executed and delivered to defendant on such escrow, and plaintiff given possession of the articles under a special agreement with H., by which plaintiff was to remove them to a place convenient for H.'s business, and apparently for his benefit—was admissible as having a material bearing on the intent of all the parties, as to whether they intended to allow title to remain in H. until plaintiff performed the conditions, and whether plaintiff was justified in not performing the conditions, and whether they had been waived.

[Ed. Note.—For other cases, see Execution, Cent. Dig. § 1402; Dec. Dig. § 471.*]

3. EXECUTION (§ 473*)—WRONGFUL EXECUTION—OWNERSHIP OF PROPERTY—EVIDENCE.

Evidence in an action for seizure by defendants on execution against H. of property claimed by plaintiff under bill of sale from H., including evidence offered by defendant but excluded, held to make the question of ownership by plaintiff or H. one for the jury.

[Ed. Note.—For other cases, see Execution, Cent. Dig. § 1405; Dec. Dig. § 473.*]

Appeal from City Court of New York, Trial Term.

Action by Louis Koenigsberg against Adolph L. Blau, one of the marshals of the city of New York, and Nathan Burnstine. From a judgment for plaintiff entered on a verdict directed by the court as to the liability, and determined as to the amount by the findings of the jury, defendants appeal. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and SEABURY and LEHMAN, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Henry C. Burnstine, for appellants.

Isidore Lowenbraun (Moses Feltenstein, of counsel), for respondent.

GILDERSLEEVE, P. J. The complaint alleges that the plaintiff was engaged in the sheeting and roofing business, at 200 Middleton street, Brooklyn, and was the lawful owner in possession of certain machinery, goods, and chattels mentioned in a schedule annexed to the complaint, and of the value of $800; that on May 25, 1907, defendant Blau, a city marshal, wrongfully seized the said property under an execution issued not against plaintiff, nor against any one having any right to said chattels, in an action in which the defendant Burnstine was plaintiff; that the agent of said Burnstine directed such wrongful seizure and aided in the removal of the chattels; that they removed all the machines and tools used by plaintiff in carrying on his business; that plaintiff was damaged $800, the value of the chattels, and $300 damage to his business in not being able to perform his contracts, owing to the loss of his machines and tools, and $775 for the ruin to his credit and the breaking up of his business, and $75 expended by plaintiff in fixing up and placing said machinery in order, and $50 expended for rent, of all of which resulting losses defendant had due notice, and plaintiff asks $2,000 damages. The answer of the two defendants is practically a general denial, except that it is admitted that the goods were seized under execution by the city marshal. The court held that, as a matter of law, plaintiff was the owner of the chattels, and that the marshal had no right to seize them, and the court submitted to the jury the issue as to the value of the property. The jury found a verdict for $662.12 in favor of plaintiff. There is evidence sufficient to support the finding as to the value of the property. The defendants appeal.

Defendants endeavored to show as indicated by questions and offer of proof which were excluded the following facts: That prior to April 5, 1907, the firm of Brust & Hartenstein were indebted to defendant Burnstine, and the latter demanded security. The partners replied that they had mortgaged all their chattels to the plaintiff to secure a note given to him for a loan of $100; that, after some negotiation, it was agreed between all parties interested that plaintiff should surrender the note and chattel mortgage to the said firm; that the latter should then execute a bill of sale to plaintiff, covering the same chattels, which were the chattels in suit; that three certain contracts of the said firm, then unfinished, should be assigned to Burnstine for his security for the indebtedness to him of the said firm, which contracts the firm and the plaintiff, working for them, should complete, and that the proceeds of such contracts should be paid to Burnstine; that the bill of sale to plaintiff, executed by the said firm, should be delivered to Burnstine, to be held in escrow until the plaintiff had carried out his agreement to help the said firm complete the assigned contracts; and that, after the completion of such contracts, Burnstine should deliver the said bill of sale to plaintiff. Evidently such proof would show that, by this agreement, Burnstine intended to hold the bill of sale in escrow as a check upon the said firm and upon plaintiff, and prevent the said firm and plaintiff from putting these chattels.

beyond Burnstine's reach, if he should be obliged to resort to them for payment of his claim. Defendant also offered to prove that, in pursuance of this arrangement, plaintiff surrendered the note and chattel mortgage, and made a contract with the said firm, setting forth the work he bound himself to do, and the said firm executed the said bill of sale, which was delivered to Burnstine, in escrow, upon the terms and conditions of an escrow agreement signed by the parties, which is in evidence, and reads as follows:

"This is to certify that I, Nathan Burnstine, of the city of New York, borough of Manhattan, do hereby acknowledge that on the 5th day of April, 1907, there was delivered to me in escrow a certain bill of sale, covering chattels in the premises No. 96 Throop avenue, in the borough of Brooklyn, city of New York, and made by Charles Brust and Max Hartenstein, composing the firm of Brust & Hartenstein, to Louis Koenigsberg, the delivery of which instrument by me to the said Louis Koenigsberg is conditioned upon the full performance by him, prior to such delivery, of his covenant to perform certain work for the said Brust & Hartenstein, as set forth in a certain agreement made between said parties, bearing even date herewith. It is further understood that the said Nathan Burnstine hereby agrees to deliver the said bill of sale to the said Koenigsberg only upon receipt by him of a notice in writing, signed by the said firm of Brust & Hartenstein, or either member thereof, if such member has succeeded to the rights of the said firm, which notice shall state that the said Koenigsberg has complied with the aforesaid covenant in said agreement, and shall authorize the said Burnstine to deliver said bill of sale to him. Nathan Burnstine.
"N. Y. April 5, 1907.
"Witness: Henry C. Burnstine.
    "Isidore Lowenbraun.
"The undersigned hereby agree to the terms and conditions above set forth, upon which the aforesaid bill of sale is held by the said Nathan Burnstine in escrow. Charles Brust.
    "Max Hartenstein.
    "Louis Koenigsberg."

The said contracts were not completed by plaintiff, and no payment made by the firm to Burnstine. The latter, therefore, did not deliver the bill of sale to the plaintiff, but obtained a judgment on his claim against Brust and Hartenstein, and issued execution which the defendant Blau, as city marshal, levied upon the said chattels covered by said bill of sale, so held in escrow, on the ground that said chattels belonged to Brust and Hartenstein, the judgment debtors, and not to plaintiff, since no bill of sale was ever delivered to him. It is not disputed that plaintiff never presented the notice called for in the escrow agreement to Burnstine, although he produced such a notice at the trial, and plaintiff claims as a reason for not completing the assigned contracts that he was told by Brust and Hartenstein he need not complete said contracts. The agreement of April 5, 1907, between the said firm and plaintiff, which is referred to in the escrow agreement above quoted, provided, among other things, that:

"The parties of the first part [the said Brust and Hartenstein] hereby agree to execute simultaneously herewith a bill of sale to the party of the second part [plaintiff], covering all the tools and machinery owned by the said parties of the first part, but not the materials now in the premises at No. 96 Throop avenue, in the borough of Brooklyn, city of New York, and to deliver the same in escrow to Nathan Burnstine, of the city of New York, borough of Manhattan, conditioned upon the performance by said party of the second part of the covenants and agreements hereinafter made by him. * * * That the said bill of

sale shall contain a provision that title to the chattels, above mentioned and in said bill of sale set forth, shall return to said parties of the first part at any time within four months from the date thereof, upon said parties of the first part paying to the party of the second part the sum of $450, and that the party of the second part shall execute such instrument as he may be then called upon to execute to reconvey said property to the said parties of the first part. * * * That such bill of sale shall also contain a provision giving to the parties of the first part full and complete custody and control of all the chattels therein specified, together with the right to use the same throughout said period of four months, it being understood, however, that the party of the second part, after the performance by him for the parties of the first part of the work hereinafter set forth, shall have the right to use such chattels, which right, however, shall be inferior to that of the parties of the first part, and at such time as the same are not being necessarily used by said last mentioned parties in their business or the business of either of them. * * * That the party of the second part agrees to remove at his own proper cost and expense, pursuant to the authorization by the parties of the first part, hereby given, all of the aforesaid chattels, together with the materials now in the premises No. 96 Throop avenue, * * * to a loft convenient for the business of the parties of the first part * * * and if they [the parties of the first part] do not pay one-half the rent, the party of the second part shall alone have the right to use such chattels for the purpose of doing his own work during that particular month. * * * The said party of the second part hereby agrees to work in the capacity of an employé in their general sheet metal and roofing business for the parties of the first part, as he has heretofore worked for them, for such time as it shall be necessary for the said parties of the first part to work to complete the work by them to be performed under certain contracts now existing between them and one Polstein, one Rosenberg &' Perlson and one Reis, upon buildings situated, respectively, on Amsterdam avenue between 114th and 115th streets, * * * 146th street between.7th and 8th avenues * * * and Chelsea street, * * * it being understood, however, that said party of the second part shall not be obliged to work for any longer period than six weeks from April 8, 1907; and it being further understood that said party of the second part shall receive no remuneration whatsoever for such work, except as hereinbefore set forth, and that such work shall be performed by him for five and one-half days in each and every week during said necessary period and eight hours during each day thereof. * * * That the bill of sale aforesaid shall be held by said Nathan Burnstine to be delivered to the said party of the second part only upon full performance hereunder by the party of the second part of his covenant to work for the parties of the first part until the completion of the contracts aforesaid. * * * That the costs of removal and installation of the chattels aforesaid to be paid by the party of the second part, as aforesaid, shall be repaid to him by the parties of the first part upon reconveyance to them of the said chattels under their option as above set forth, unless said parties of the first part shall remove the same from the premises where the party of the second part then has the same."

The bill of sale, among other things, provided that:

"Upon condition, however, that if we, the said parties of the first part [the said Brust & Hartenstein] shall and do well and truly pay unto the said party of the second part [plaintiff] * * * the true and lawful sum of $450, on or before the 8th day of August, 1907, then these presents shall be void. And upon further condition that the aforesaid goods and chattels shall be and remain in the custody, possession, and control of the said parties of the first part to be used by them during the said period from the date of these presents to the 8th day of August, 1907, as provided in and by a certain agreement between the parties hereto of even date herewith."

Plaintiff claims that he was working on one of the contracts assigned to Burnstine up to the time of the seizure of the chattels under execution, as aforesaid, that he had been working on another of the contracts, and that, as to the third, the firm told him he need not

work on that because Burnstine had taken it away from them. Plaintiff never received the $450 mentioned in the bill of sale, and, although it seems undisputed that the contracts were not completed, he claims that two days before the seizure of the chattels, as aforesaid, he obtained from the firm the following notice:

"May 23, 1907.

"Mr. Nathan Burnstine,

"Dear Sir: I beg to inform you that Mr. Louis Koenigsberg has complied with the agreement of April 5th, 1907, and you are hereby authorized to deliver the bill of sale from us to him, dated April 5th, 1907, to said Louis Koenigsberg.

　　　　"Yours respectfully,　　　　Brust & Hartenstein, by Charles Brust."

This notice was not presented to Burnstine, according to the plaintiff, because the latter about that time procured a judgment against Brust & Hartenstein by default, and two days after the receipt by plaintiff from Brust of the above notice the chattels were seized under the execution issued upon said judgment.

The question presented is this: Was the title to these chattels at the time of the seizure in plaintiff or in Brust & Hartenstein, the judgment debtors, against whom the execution, under which the chattels were taken, was issued? The plaintiff stated on the stand that it was in virtue of the bill of sale so left in escrow, as above stated, that he claimed title to the chattels. The plaintiff, it will be remembered, obtained possession of the chattels, not by virtue of the bill of sale, but by a special agreement, above set forth, by which plaintiff was to remove the chattels to a loft in New York convenient for the firm's business, apparently for the benefit of the said firm, and by their special authorization, so that the mere possession of the chattels at the time of the seizure can hardly be regarded as evidence of title. It seems to us from a perusal of the various contracts between the said firm and the parties to this action that defendant's offer of proof was improperly excluded because it had a material bearing on the intent of all the parties, as to whether or not they intended to allow the title to remain in the firm until plaintiff had fulfilled the conditions mentioned in the contracts, and whether or not plaintiff was justified in not completing the work on the assigned contracts, and whether or not such conditions had been waived. If defendant had been permitted to introduce the evidence offered, it would have been incumbent upon the court to submit all the issue to the jury and leaving it to them, under proper instructions, to say whether the chattels, under the evidence shown, belonged to plaintiff, and so were not subject to an execution issued against the property of the firm, or remained the property of said firm, and thus were liable to be seized under said execution.

The judgment must be reversed and a new trial ordered, with costs to appellants to abide the event. All concur.